In re J. Robert SWARTZ, Jr., J. Robert Swartz, Inc., Debtors.

PIONEER NATIONAL TITLE INSURANCE COMPANY, Plaintiff,

v.

J. Robert SWARTZ, Jr. and J. Robert Swartz, Inc., Defendants.

Bankruptcy Nos. 78–01219, 78–01220.

United States Bankruptcy Court,
E. D. Virginia,
Richmond Division.

Feb. 2, 1982.

Denis C. Englisby, Chesterfield, Va., for plaintiffs.

Walter L. Hooker, Richmond, Va., for defendant.

MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes on upon the filing of a Complaint by Pioneer National Title Insur-

ance Company (Pioneer) to determine the dischargeability of a debt pursuant to § 17(a)(2) and (4) of the Bankruptcy Act of 1898 as amended. Upon the filing of an Answer by J. Robert Swartz, Jr. and J. Robert Swartz, Inc. (Swartz) and upon the submission of a Stipulation of Facts, trial was held on the remaining facts not stipulated and after submission of briefs and argument this Court makes the following determination.

## STATEMENT OF THE FACTS

Swartz was the general contractor for the construction of homes on five parcels of real estate which he owned. Swartz asked Pioneer, a title insurance company, to provide title insurance for lenders making construction loans placed on those lots. Swartz and Pioneer entered into an agreement by which Pioneer agreed to provide the title insurance including protection of the mortgage lender against possible mechanics' and materialmen's liens. The agreement provided that in consideration of Pioneer issuing without exception to possible mechanics' and materialmen's liens its title binders or policies insuring deeds of trust recorded for the purpose of securing construction loans, Swartz would guarantee and covenant to pay promptly any and all mechanics' and materialmen's liens filed against any and all of the property owned by Swartz and insured by Pioneer.

As a further condition of issuing the title insurance policies, Swartz was required to execute an "Owners and Contractors Affidavit" which provided that "all of the persons . . . who have furnished services, labor or materials, according to plans and specifications, or extra items, used in the construction or repair of such improvements, have been paid in full, that there are no mechanics' or materialmen's liens against said property and no claims outstanding that would entitle the holder thereof to claim a lien against the property . . . and that such construction or repair has been fully completed and accepted by the owner."

The parties stipulated the following pertinent facts:

1. That if J. Robert Swartz, Jr. and/or J. Robert Swartz, Inc. acted fraudulently or used false pretenses or false representations as defined in § 17a of the Bankruptcy Act, the debt would be nondischargeable.

2. That Pioneer fully performed its portion of the guaranty agreement.

3. That certain mechanics' liens were filed against the property on which the houses were constructed and as a result of those liens Pioneer has expended the sum of $71,943.09.

4. That Swartz, prior to the date of signing any of the affidavits required by Pioneer, was aware that materialmen and subcontractors had not been paid in full.

5. That Pioneer relied upon the guaranty agreement and the Owner's and Contractor's Affidavits in issuing its policies of title insurance without exception to mechanics' and materialmen's liens and this resulted in Swartz receiving loan proceeds that would not have been obtained but for Pioneer's reliance upon those documents.

He proceeded to construct each of the five homes at substantially the same time and took the loan proceeds to pay his creditors according to the creditors' needs and to the length of time bills had been outstanding. He did not necessarily pay the materialmen with funds corresponding to homes on which they had worked. Swartz routinely used his loan proceeds for current jobs to meet operating expenses and to pay obligations on prior construction.

Despite using the loan draws to pay his materialmen, Swartz was unable to complete four of the five houses under construction and could not pay all of his creditors. As a result, Pioneer suffered a loss of $71,943.09 in protecting its insured under the insurance it issued.

Swartz said that it was both his routine business procedure and the routine business procedure of the construction industry to execute agreements stating that subcon-

tractors and materialmen had been paid although they had not been paid. He said that general contractors had to sign the agreements and guarantees in order to pay the subcontractors and materialmen with the proceeds of the construction loans.

Swartz said he intended to pay all of his subcontractors and materialmen with the funds he drew after executing the affidavits and guaranty. He acknowledged he thought the practice was not right, but he said that he did not intend to do anything wrong.

Pioneer offered no testimony at trial nor did it contest Swartz's statement that it was both his practice and the common practice in the real estate community to execute the affidavits in order to obtain loans and only after the loan proceeds were delivered did he then pay off the claims of subcontractors.[1]

## CONCLUSIONS OF LAW

■ A debt for obtaining money or property by false pretenses or false representations is nondischargeable in bankruptcy pursuant to 11 U.S.C. § 35(a)(2) provided that an objecting creditor can show the existence of each of the following elements: "(1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made." *Sweet v. Ritter Finance Company*, 263 F.Supp. 540, 543 (W.D. Va.1967). Furthermore, the objecting creditor must prove the existence of each of these elements by clear and convincing evidence. *Brown v. Buchanan*, 419 F.Supp. 199 (E.D.Va.1975).

In the instant case Swartz obtained title insurance from Pioneer by executing an affidavit stating that all of the mechanics and materialmen had been paid in full and that they had no liens against the property. Swartz stipulated that these statements were false, that certain mechanics' liens were filed against the property and that as a result Pioneer had to pay the sum of $71,943.09 pursuant to its title insurance agreement.

■■ Although Swartz's statements admittedly were false, material representations which are found to be false do not necessarily constitute "fraud" or "false representations" within the meaning of § 17(a)(2) of the Bankruptcy Act. *Wright v. Lubinko*, 515 F.2d 260, 263 (9th Cir. 1975). The false statement also must have been made with an intent to deceive and the creditor must have reasonably relied upon that statement. *In re Vickers*, 577 F.2d 683, 687 (10th Cir. 1978); *In re Dolnick*, 374 F.Supp. 84, 90 (N.D.Ill.1974). "Intent to deceive" is a necessary element of fraud. *United States v. Syros*, 254 F.Supp. 195, 198 (E.D.Mo.1966).[2] *Black's Law Dictionary* defines fraud as "[a]n intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right. A false representation of a matter of fact, whether by words or by conduct, by false or misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury." *Black's Law Dictionary* 594 (5th ed. 1979).

---

1. The affidavit executed by Swartz contains a provision that if the materialmen or subcontractors had not been paid in full, their names would appear on the reverse side of the affidavit. The reverse side of the affidavit was a waiver of liens and the execution thereof by a materialman or subcontractor had the effect of subordinating the lien for payment to any party making a loan on the real estate for which the affidavit was executed. It is this waiver that protects the title insurer against the possibility of a lien being filed.

2. "The 'false pretenses or false representations' must be as to facts, knowingly and falsely made with *fraudulent intent* for the purpose of obtaining money or property from another, and by means of which the same is obtained." *Weigand v. Furniss*, 85 Idaho 189, 377 P.2d 371, 372 (1962).

Pioneer did not produce any evidence that Swartz obtained or used the short form waiver fraudulently. He executed a guaranty agreement to save harmless the plaintiff from loss arising out of the filing of mechanics' and materialmen's liens and thereupon became personally liable for any nonpayment to subcontractors. The requirement that the debtor possess a fraudulent intent when he makes a false representation infers the necessity of proving the existence of actual fraud involving moral turpitude. *Wright* at 263. "The frauds . . . are those which in fact involve moral turpitude or intentional wrong . . . It must further affirmatively appear that such representations were knowingly and fraudulently made . . . ." 1A *Collier on Bankruptcy*, ¶ 17.16 (14th ed. 1976).

This Court is unable to find that there is clear and convincing evidence that Swartz's statement constituted a false representation under this definition. Swartz testified that although he knew the statement was false his usual business procedure involved signing such agreements and affidavits in order to obtain proceeds of the loans to pay his bills to subcontractors and materialmen. He also testified that this procedure was a "common practice" in the construction industry. Pioneer proffered no evidence refuting that testimony. Finally, Swartz's own statements at trial indicate that he did not intend to do anything morally wrong by engaging in this sort of business procedure. He signed the statements, just as he had done numerous times previously, in order to obtain the funds to pay his subcontractors and his other creditors. He was required to sign the statements; otherwise the funds would not have been forthcoming.

Pioneer offered no testimony which would cast any doubt on the veracity of Swartz's testimony as to his intent when he signed the short form waiver. Furthermore, the facts and circumstances surrounding this particular case combine to support Swartz's claim that he did not intend to deceive Pioneer when he signed the waiver form. Swartz simply followed the area's general business practice in order to obtain the funds to pay his materialmen and subcontractors. Although this Court takes a dim view of any practice by which individuals utter false statements, Swartz's unrebutted testimony shows he did not intend to deceive Pioneer.

An appropriate order will issue.