In re Charles W. CARNEAL and Gwendolyn P. Carneal, Debtors.

CAPITAL INSURANCE AGENCY, INC., Plaintiff,

v.

Charles W. CARNEAL, Defendant.

Bankruptcy No. 82-01373-R.
Adv. No. 82-0298-R.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Oct. 12, 1983.

Stephen Chaplin, Richmond, Va., for plaintiff.

Gordon A. Wilkins, Richmond, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court upon the plaintiff's complaint to determine the dischargeability of a debt owed it by the debtor. After notice and hearing, at which hearing testimony and evidence was taken, and after submission of briefs by both parties, this Court renders the following opinion.

## STATEMENT OF FACTS

Between October, 1978, and August, 1980, the plaintiff, Capital Insurance Agency, Inc. (Capital), loaned money to one of its agents, Charles W. Carneal (Carneal), the debtor/defendant. Most of the money loaned was in the form of advances against commissions. There was a specific loan for $5,827.97 in April of 1979. While the exact amount of Carneal's indebtedness during that period was unclear, the parties agreed that a note for $33,919.05, dated August 7, 1980, represented Carneal's complete obligation to Capital.

Some months after the commencement of advances to Carneal and upon request by H. Hobbs Goodwin (Goodwin), president of Capital, and for Capital's protection, Carneal, by a letter dated April, 1979, assigned to Capital "all future commissions as a result of the sale of life insurance." Carneal contends that the assignment applied only to commissions on policies written after April, 1979. Goodwin, on the other hand, testified that the assignment covered all commissions received by Carneal after April, 1979, regardless of the policy date.

Goodwin also testified that in May of 1979 he noticed several "window" envelopes addressed to Carneal, which appeared to contain commission checks. After confirming these suspicions, Goodwin confronted Carneal about these checks. Carneal endorsed at least one check over to Capital, but retained three others stating that they were from policies written before the letter

of assignment. Goodwin testified that he suspected other checks were retained by Carneal, but no credible evidence was presented, except for the three checks introduced. These three checks totaled $12,-839.70. After the confrontation Capital continued to make Carneal monthly advances until August, 1980. Goodwin explained that he permitted the advances to continue on the hope of recouping the entire amount of the debt owed to Capital by Carneal.

To gain further assurance of repayment, Goodwin requested Carneal to assign a life insurance policy to Capital. This was done on August 14, 1980. When Capital attempted the assignment, it learned that the policy was void due to nonpayment of premiums. Additionally, Capital learned that the policy, even if valid, had been assigned previously to a third party.

Carneal testified that he had signed an assignment form in blank without designating any policy number. Carneal stated that he made the assignment as a gesture of goodwill towards Goodwin and Capital. In addition, Carneal testified that Goodwin knew the old policy was invalid and had been assigned previously to New England Life, and that the new assignment was for any policy which Carneal might obtain in the future. Goodwin testified, however, that the policy number was on the assignment form when Carneal affixed his signature. Additionally, he denied any knowledge of the policy's invalidity until the attempted assignment.

Since May 1, 1979, Capital received approximately $52,975.92 worth of commissions credited to Carneal. Capital claims a substantial portion of this amount had to be returned to the insurance companies because the premiums on the policies had not been maintained. Additionally, plaintiff contends that some of the commissions credited to Carneal were actually the result of work done by other agents. Therefore, Capital contends the amount of credited commissions available to Capital to satisfy Carneal's indebtedness to them is considerably less than $52,975.92.

On January 28, 1982, Capital obtained a default judgment against Carneal in the Circuit Court of the City of Richmond, Division I, for $29,834.97 plus interest, court costs, and attorney's fees. Carneal did not defend the suit. He testified that he was under considerable strain due to family problems at the time. No other reason for his failure to defend was given. The judgment, after finding the defendant in default, stated "that the defendant [Carneal], through fraud and deceit, induced plaintiff to advance him various sums of money in return for promissory notes and assignment of future commissions."

Carneal filed his petition in bankruptcy under Chapter 7 of the Bankruptcy Reform Act in this Court on August 25, 1982. Capital now seeks to have the debt declared nondischargeable under Section 523(a)(2).

## CONCLUSIONS OF LAW

Capital contends Carneal assigned his future commissions and his life insurance policy knowing that all future commission checks would not be going to Capital and that the policy was invalid. In addition, Capital contends that these assignments induced it to continue the advancements to Carneal. Consequently, Capital alleges that the debt owed it from the debtor is nondischargeable because it was incurred by actual fraud, false pretenses or false representations. 11 U.S.C. § 523(a)(2)(A).

Section 523(a)(2)(A) provides

(a) a discharge under section 727, 1141, of 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

In previous cases, this Court has clearly set out an objecting creditor's burden pursuant to 11 U.S.C. § 523(a)(2)(A) in proving money was obtained by false pretenses or false representations. A debt for

obtaining money or property by false pretenses or false representations may be rendered nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(2)(A) provided that the objecting creditor can show the existence of each of the following elements: (1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained the alleged loss and damage as a result of the representations having been made. *Sweet v. Ritter Finance Co.,* 263 F.Supp. 540, 543 (W.D.Va.1967). *In re Holt,* 24 B.R. 696 (Bkrtcy.E.D.Va.1982); *In re Swartz,* 18 B.R. 64 (Bkrtcy.E.D.Va.1982); *In re Dawson,* 16 B.R. 70 (Bkrtcy.E.D.Va.1981); *In re Lieberman,* 14 B.R. 881 (Bkrtcy.E.D.Va. 1981). Courts must strictly construe the exceptions set forth in 11 U.S.C. § 523(a)(2). *See, Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). The objecting creditor must prove the existence of each of these elements by clear and convincing evidence. *Brown v. Buchanan,* 419 F.Supp. 199 (E.D.Va.1975).

Before this Court is a default judgment of approximately $28,834.97. Absent fraud in the procurement of that judgment, this Court may be bound by the amount, but not bound by the determination of fraud in the state court decision. Bankruptcy courts may and, in fact, should look behind such default judgments to determine independently the issue of fraud or false representations when a complaint to determine dischargeability is brought. *In re Pigge,* 539 F.2d 369 (4th Cir.1976). This is clearly true where the issue of fraud need not be determined to render judgment. Consequently, this Court will apply the above established test to determine dischargeability.

Taking the plaintiff's evidence in its best light, Capital has demonstrated only two possible representations made by Carneal that might serve as a basis for nondischargeability. First, Carneal arguably represented that all future commissions would be available to Capital from which it could satisfy Carneal's obligation. Second, Carneal arguably represented to Capital that a valid life insurance policy existed to which Capital could look to secure the obligation. These two representations are the only ones that might be a basis for determining the debt to Capital from Carneal to be nondischargeable. Capital failed to establish any other even tenable representation was made by Carneal.

As to the first representation, this Court holds that what was present was at worst a misunderstanding between the parties and not any form of active deceit on the part of the debtor, Carneal. Carneal believed his assignment of "future commissions" covered those commissions earned on policies written after the date of the assignment. Capital, on the other hand, believed the assignment covered any commissions received after the date of the assignment. As to this allegation of fraud, Capital's only other evidence on the issue of fraud is the state court judgment. Such a determination, however, is not binding in this Court, *In re Pigge, supra,* and when such judgment is by default it has little, if any, evidentiary value. Subsequently, if more than a misunderstanding or bad business judgment existed here, Capital has failed to produce clear and convincing evidence to show such false representations or actual fraud in the debtor's activities.

As to the second representation that Carneal assigned an invalid insurance policy in order to induce Capital to continue to advance sums of money, here too Capital has failed to prove by clear and convincing evidence that such a representation was even made in fact and if made, whether it was false and, if false, whether it induced reliance resulting in a loss. Capital's evidence was controverted by Carneal. Whether the policy listed on the assignment form was written by Carneal or by some other party was something that Capital should have established at trial. Left with nothing but contradictory testimony by the defendant and the plaintiff, this Court declines to hold that the debtor made false representations

to induce reliance by the plaintiff. This holding is particularly compelling in light of the plaintiff's substantial burden to establish the truthfulness of its allegations. *Brown v. Buchanan, supra.*

Even more significant to the determination of this case and fatal to Capital's claim is that after learning of Carneal's different interpretation of what was covered by "future commissions" Capital continued to advance money to Carneal. As of May, 1979, Capital became aware that some of Carneal's commission checks were not being received by Capital. Yet, Capital continued to advance money to Carneal until August of 1980 even though Carneal refused to endorse over three checks. Such a refusal constituted a breach of the agreement according to Capital's interpretation and Goodwin was fully aware of the breach but permitted, nonetheless, Carneal to receive advances.

By the plaintiff's own admissions in its post-trial briefs two key facts undermine the allegation of fraud based on the insurance policy assignment. First, the advances to Carneal stopped in August, 1980. Second, the assignment was also in August, 1980. Therefore, any fraud associated with the assignment of the insurance policy is immaterial to this Court's determination here because the assignment was subsequent to the advances. "If the property . . . was obtained prior to the making of any false representation, subsequent misrepresentation would have no effect on the discharge of the debt." 3 Collier on Bankruptcy, 15th ed. ¶ 523.08[4] (1983); *see also, In re Ayers,* 25 B.R. 762, 773 (Bkrtcy.M.D. Tenn.1981); *In re Byrd,* 9 B.R. 357, 359 (Bkrtcy.D.D.C.1981).

In conclusion, the creditor, Capital, has failed to present clear and convincing evidence showing that false representations were made or that if made, the creditor relied on such representations, or that such representations caused the creditor's alleged loss. Unless this Court is presented with clear and convincing evidence of all five elements needed to constitute fraud

under 11 U.S.C. § 523(a)(2)(A), the Court cannot find for the creditor.

An appropriate Order will issue.