In re Herman Dean BAILEY, Sr., Theresa Gale Sharp Bailey, Debtors.

Irene B. MERCER, Plaintiff,

v.

Herman Dean BAILEY, Sr., Defendant,

and

Randy VAN DYKE, Plaintiff,

v.

Herman Dean BAILEY, Sr., Theresa Gale Sharp Bailey, Defendants.

Bankruptcy No. 82–01274–R.
Adv. Nos. 82–0318–R, 82–0336–R.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Nov. 21, 1983.

chargeability of debts by Randy Van Dyke and Irene B. Mercer. Regrettably, the litigants in this matter are all related family members. The debtor and defendant, Herman Dean Bailey, is the brother of one of the plaintiffs, Irene B. Mercer. The other plaintiff, Randy Van Dyke, is the nephew of Irene B. Mercer. Because of the similarity of issues and facts involved, the two adversary proceedings were consolidated for trial.

Theresa Gale Sharp Bailey, the wife of Herman Dean Bailey, Sr., was made a defendant in the proceeding brought by Randy Van Dyke. She was not, however, named as a defendant in the suit by Irene B. Mercer. Upon motion by counsel for Theresa Bailey and ruling by this Court, Theresa Bailey was dismissed as a party defendant in the complaint brought by Randy Van Dyke. Moreover, upon motion made at trial by Van Dyke's counsel, his complaint to determine the dischargeability of a debt was dismissed without objection. Thus, the only matter now before the Court is the complaint by Irene B. Mercer against Herman Dean Bailey, Sr. to determine the dischargeability of a debt allegedly owed to plaintiff by the debtor. After a trial on the merits, this Court renders the following opinion.

### STATEMENT OF FACTS

The debtor owned a mobile home which apparently sat on a rented space in a mobile home park. Towards the end of 1981, the debtor was attempting to sell this mobile home in hopes of moving into a house in Midlothian, Virginia. Van Dyke was interested in purchasing the mobile home. Van Dyke was unable on his own, however, to procure a loan for the $6,000.00 payment sought by Bailey. Bailey intended to use the $6,000.00 purchase price for a down payment on the Midlothian property. In addition to the $6,000.00 payment to Bailey, Van Dyke would have to assume a loan of approximately $12,000.00 to obtain the mobile home.

In an effort to assist Van Dyke in procuring the required loan and thereby to acquire

Mary E. Cox, Richmond, Va., for plaintiffs.

Robert A. Canfield, Richmond, Va., for defendants.

### MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court upon the filing of complaints to determine dis-

his requested down payment, Bailey discussed terms with United Virginia Bank (UVB). After talking with the bank, Bailey represented to Van Dyke and Mercer that Van Dyke could receive the $6,000.00 loan for the mobile home purchase if Bailey and Mercer would endorse the note with Van Dyke. Consequently, Mercer and Bailey signed a note in December, 1981, as "endorsers" and Van Dyke signed as "borrower." Van Dyke received from UVB a check for $6,000.00 as proceeds of the loan. The check was signed over to Bailey as a down payment on the mobile home. Bailey, in turn, used the amount to purchase real property in Midlothian, Virginia.

At the time of this loan to Van Dyke, Percy Wilson Mortgage Company (Percy Wilson) held a purchase money lien of approximately $12,000.00 on the mobile home. In an effort to complete the transaction to acquire the mobile home Van Dyke attempted to assume Bailey's obligation to Percy Wilson. Percy Wilson would not agree to an assumption of the outstanding indebtedness by Van Dyke. At the time of the negotiations for the purchase of the mobile home, neither Bailey nor Van Dyke were aware that Percy Wilson would not allow Van Dyke to assume Bailey's loan. There is no evidence before this Court as to Percy Wilson's reason or right to refuse assumption of the loan by Van Dyke. Upon learning of Van Dyke's inability to assume the loan, Bailey personally and through his real estate agent continued to look for buyers of the mobile home, but did not return the $6,000.00.

On or about March 8, 1982, the note signed by Van Dyke, Bailey, and Mercer in December, 1981, fell due. Bailey paid the interest due on the note to UVB and at that time the bank extended the repayment of the principal $6,000.00 for 90 days. This renewal note was signed by Van Dyke, Bailey, and Mercer in the same capacities they signed the December, 1981 note. At the time of this renewal, the debtor, Bailey, believed that he had a new purchaser for the mobile home and communicated to Mercer that he had a buyer and that he would use the proceeds from that sale to pay off

the loan from UVB. Also, on or about March 8, 1982, for reasons unknown to this Court yet irrelevant to its decision here, Van Dyke was incarcerated by state authorities.

Having purchased the property in Midlothian, upon which a mortgage was taken, and still obligated on the purchase money loan for the mobile home in question here, Bailey, the debtor, had substantial debt obligations. Bailey attempted to make payments on the mobile home, the lot rentals, as well as his new home mortgage. When the $6,000.00 loan renewal fell due, which was on or about June 7, 1982, the "borrower" (Van Dyke) was unable to meet the obligation because he continued to be incarcerated. The bank looked to the endorsers, Mercer and Bailey. The debtor's indebtedness, however, became overwhelming. In August, 1982, because of Bailey's inability to sell the trailer, Percy Wilson foreclosed on it. In September, due to financial problems caused by these and other events, the debtor and his wife filed a joint petition in bankruptcy in this Court. After the Baileys filed bankruptcy and with Van Dyke being incarcerated, UVB looked to Mercer to satisfy the overdue obligation. Mercer signed a new note to UVB to satisfy the indebtedness. Mercer then brought this action to determine the nondischargeability of a debt owed to her by Bailey based on fraud.

The plaintiff, Mercer, contends that Bailey induced her to sign the initial loan agreement by telling her that the $6,000.00 payment was all that was needed to "get Randy into the trailer". Mercer denied any knowledge of an outstanding debt owed on the mobile home that would be Van Dyke's responsibility. Additionally, Mercer contends that Bailey induced her to sign the renewal agreement by telling her that he had a definite buyer for the trailer and that the proceeds of that sale would be used to pay off the $6,000.00 debt immediately. Mercer, however, by her own testimony, stated that she would have helped Van Dyke and Bailey even if additional payments on the trailer were required after the

$6,000.00 loan was obtained. Moreover, Van Dyke testified that everyone in the family knew that he was trying to buy the trailer from Bailey with the $6,000.00 loan, plus an assumption with Percy Wilson the lender/lienor on the trailer.

## CONCLUSIONS OF LAW

■ In addition to alleging that this debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2) as the plaintiff so alleged in her complaint, counsel for the plaintiff raised § 523(a)(4) as grounds for nondischargeability in his final argument. Although the plaintiff failed to raise this ground in her complaint, this Court both addresses and disposes of that basis of nondischargeability by stating simply that the plaintiff failed to put on any evidence to show that the defendant was in an agency or fiduciary relationship with any of the parties involved in this matter. Absent a showing of such a fiduciary relationship, the plaintiff is foreclosed from demonstrating nondischargeability pursuant to 11 U.S.C. § 523(a)(4).

The plaintiff does, however, make out a prima facie case for nondischargeability under § 523(a)(2)(A). Section 523(a)(2)(A) provides

(a) a discharge under section 727, 1141, of 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

■ A debt for obtaining money or property by false pretenses or false representations, may be rendered nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(2)(A) provided that the objecting creditor can show the existence of each of the following elements: (1) the debtor made the representations; (2) that at the time he knew the representations were false; (3) that he made the representations with the intention and purpose of deceiving a creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained the alleged loss and damage as a result of the representations having been made. *Sweet v. Ritter Finance Co.,* 263 F.Supp. 540, 543 (W.D.Va.1967); *see also, In re Carneal,* 33 B.R. 922 (Bkrtcy.E.D. Va.1983); *In re Knott,* 32 B.R. 252 (Bkrtcy. E.D.Va.1983); *In re Holt,* 24 B.R. 696 (Bkrtcy.E.D.Va.1982); *In re Swartz,* 18 B.R. 64 (Bkrtcy.E.D.Va.1982); *In re Dawson,* 16 B.R. 70 (Bkrtcy.E.D.Va.1981); *In re Leiberman,* 14 B.R. 881 (Bkrtcy.E.D.Va.1981). Courts must strictly construe the exceptions set forth in 11 U.S.C. § 523(a)(2). *See, Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). Moreover, the objecting creditor must prove the existence of each of these elements by clear and convincing evidence. *Brown v. Buchanan,* 419 F.Supp. 199 (E.D.Va.1975).

■ The first element of proof requires that the debtor made representations. Mercer argues that although Van Dyke was aware of the lien, Bailey's failure to disclose the existence of a lien on the mobile home was a representation by which fraud was perpetrated. The failure to disclose a particular fact is at best an implied representation. Some courts have held that such an omission is, in fact, an implied representation and as such is sufficient to establish the first element. *See, In re Pommerer,* 10 B.R. 935 (Bkrtcy.D.Minn.1981); *In re Brooks,* 4 B.R. 237 (Bkrtcy.S.D.Fla.1980). Such cases usually involve situations where the defendant owes a duty of disclosure to the plaintiff. This Court, however, knows of no obligation on the part of a co-endorser to disclose circumstances surrounding a transaction to other co-endorsers. Consequently, this Court follows the decisions of those courts that have held that such omissions are not a "false pretense" or "representation" for purposes of 11 U.S.C. § 523(a)(2)(A). *In re Breword,* 15 B.R. 211 (Bkrtcy.D.Kan.1981). This case is distinguishable from those cases similar to *In re Kohl,* 11 B.R. 470 (W.D.Wis.1981) because here the omission or silence was not by a seller of goods where a warranty of title

(i.e. a representation implied-in-law) might arise.

■ Nonetheless, the plaintiff, Mercer, has shown satisfactorily that the debtor/defendant, Bailey, made two representations to Mercer. First, Bailey represented that Van Dyke would acquire the mobile home if Van Dyke could qualify and receive the $6,000.00 loan. Second, at the time of the renewal of the loan, Bailey represented to Mercer that he had a purchaser for the mobile home and that when sold the proceeds would be used to pay off the UVB loan. Therefore, the plaintiff satisfies the initial requirement that "the debtor made representations."

The plaintiff, however, has not shown that the debtor knew the representations were false. With regard to the initial representation that the loan would permit Van Dyke to acquire the mobile home, there is no evidence that Bailey was aware of any condition that would permit Percy Wilson to refuse to allow Van Dyke's assumption of Bailey's obligation with Percy Wilson. Although Mercer believed that $6,000.00 was all that was required to "get Randy [Van Dyke] into the trailer," the weight of evidence, however, demonstrates that the entire family knew that Van Dyke would have to assume the existing obligation on the trailer as well as pay Bailey the $6,000.00. If Percy Wilson had allowed the assumption, the $6,000.00 loan would have permitted Van Dyke to acquire the mobile home. Therefore, the representation that the $6,000.00 loan would "get Randy into the trailer" was not false when made. Moreover, any failure by Bailey to disclose to Mercer that Van Dyke was required to assume the existing obligation with Percy Wilson does not establish a basis for nondischargeability. As demonstrated above, such an omission or silence does not constitute a representation, and, therefore, cannot be a representation the "debtor knew was false."

With regard to the second representation that Bailey had found a purchaser for the mobile home and that the proceeds from such sale would be used to pay off the UVB loan, it too was not false when made. The evidence presented demonstrates that once Van Dyke became incapable of assuming the loan, Bailey and his real estate agent attempted diligently to sell the mobile home to another purchaser and was doing so *at the time* of the loan renewal with UVB, and therefore at the time of the representation, an apparently willing and able buyer had been found. It was not until after the UVB loan renewal agreement had been signed that the potential buyer decided against the purchase. Additionally, plaintiff produced no evidence demonstrating that had the sale been consummated that Bailey had no intention to and would not use the proceeds to pay off the UVB loan. Therefore, this Court holds that at the time the representations relating to the subsequent sale of the trailer were made to the plaintiff the debtor did not know that they were false.

To prevail in a complaint to determine dischargeability under 11 U.S.C. § 523(a)(2)(A), the creditor must establish all of the five elements discussed previously. Having failed to establish the second element, this Court finds sufficient basis to declare the debt in question dischargeable. However, to further bolster this determination, this Court points particularly to the reliance element and the plaintiff's own testimony. Under oath, the plaintiff testified that even if payments in excess of the $6,000.00 loan were required for Van Dyke to obtain the mobile home she would have signed the loan obligation to help Van Dyke and Bailey. Thus, even if the representations were false, absent reliance by the plaintiff the debt in question must be declared dischargeable.

This Court also concludes that, although not raised at trial, had Mercer sought equitable relief such as a constructive trust or equitable lien to the extent of $6,000.00 on the real estate acquired by Bailey, such issues would not preclude a determination of the dischargeability of Bailey's obligation to Mercer pursuant to 11 U.S.C. § 523(a).

An appropriate Order will issue.