In re Homer W. HANDY, Jr., Debtor.

Herman F. BLAKE, Sr., Plaintiff,

v.

Homer W. HANDY, Jr. and Kathleen N. Handy, Defendants.

Bankruptcy No. 82–01067–R.
Adv. No. 82–0278–R.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Dec. 19, 1983.

Robert S. Ganey, Hanover, Va., for plaintiff.

Harry Shaia, Jr., Richmond, Va., for defendants.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court upon the filing of dischargeability complaints against Homer W. Handy and Kathleen N. Handy by the plaintiff, Herman F. Blake, Sr. By order of this Court, the two matters were consolidated for trial. On November 3, 1983, a trial on the merits was held and after taking the matter under advisement this Court makes the following determination of facts and conclusions of law.

## STATEMENT OF FACTS

Sometime prior to August 18, 1978, the defendants, Homer W. Handy, Jr. and Kathleen N. Handy, experienced some financial difficulties. In an effort to resolve these financial problems, Homer Handy approached the plaintiff, Herman F. Blake,

Sr., in the hopes of obtaining some financial assistance. Handy at the time was a licensed real estate broker who maintained an office in Blake's real estate business. In an effort to help the Handys, Blake contacted a friend at Old Dominion Bank and suggested that he talk to Mr. Handy about his financial situation. Handy met with and discussed his financial situation with a representative of Old Dominion Bank, at which time the representative disclosed that he would be unable to provide the assistance Handy sought.

Approximately one week later, Handy and Blake again discussed Handy's financial plight and Blake again endeavored to help them. Blake contacted Charles Ewing, a bank official with First and Merchants National Bank (F & M), with whom Blake had dealt with on other occasions. Blake testified that the bank was willing to make an $8,500.00 loan to him on the strength of his own credit, but that Ewing said it would be necessary to go to the Patterson Avenue branch of F & M to finalize the details of such loan because the proposed loan was not the type (real estate) of loan subject to Ewing's supervision.

On August 18, 1983, Blake and Handy went to the Patterson Avenue Branch of F & M to sign the necessary documents for this loan transaction. Although the loan was made to Blake, the bank requested some collateral from the Handys. No evidence was presented demonstrating that Blake requested the Handys to provide collateral. Pursuant to that request, Mr. Handy called his wife and asked her to bring her stock certificates to the bank to be used as collateral for the F & M loan to Blake. At that time, F & M made a loan to Blake for $8,500.00 plus interest. Blake was the sole maker of the note to F & M. The preferred stock certificates owned by Kathleen Handy in Frank H. Nott, Inc. were pledged to the bank as collateral for the loan to Blake. At the same time, Homer Handy signed a financial statement which represented that the pledged stock certificates had a value of $127,400.00. In addition, Blake testified that Handy had told him that the stock was worth a value

sufficient to educate his seven children. The testimony of Homer Handy was (1) that the stock had been inherited by Kathleen N. Handy; (2) that he had no knowledge of the value of the pledged stock; (3) that the value placed on the financial statement which he signed was ascertained by the bank pursuant to a phone call made by Charles Ewing to some other official at F & M who dealt regularly with the Frank H. Nott, Inc. account; and (4) that he only told Blake that the stock was intended to be used to help educate his children and that because he never knew the stock's value, he never represented that it had any particular value.

Mrs. Handy testified that the stock was an inheritance in a closely held family corporation and that she had no idea what the stock was worth. She did not participate in the preparation of the financial statement and she did not know its contents. Bradley Nott, treasurer of Frank H. Nott, Inc., testified that the stock did not trade publicly and at the time Frank H. Nott, Inc. purchased the pledged stock it paid $2.65 per share for the 182 shares owned by Mrs. Handy. He further stated that the value of the stock would have varied only slightly between the time of the pledge and its acquisition by the corporation.

The $8,500.00 loan proceeds of the loan from F & M to Herman Blake were given to the Handys by Blake in return for a promissory note signed by both Homer W. and Kathleen N. Handy. In need of further financial help, Blake made a $1,000.00 loan to Homer Handy in return for a promissory note signed only by Homer Handy. Both of these notes were demand notes. After some time the Handys were unable to make payments to Blake. In state court Blake obtained a judgment against both Kathleen and Homer Handy on one note and a judgment against Homer Handy individually on the other note. The plaintiff seeks to have the amount of these two judgments declared nondischargeable in bankruptcy.

## CONCLUSIONS OF LAW

■ Plaintiff bases his complaint for nondischargeability on § 523(a)(2)(A) and on § 523(a)(2)(B). In prior cases, this Court has clearly set out an objecting creditor's burden pursuant to 11 U.S.C. § 523(a)(2) in proving that money was obtained by false pretenses or false representations or by the use of a false financial statement. Such a debt may be rendered nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(2) provided that the objecting creditor can show the existence of each of the following elements: (1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained the alleged loss and damage as a result of the representations having been made. *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va. 1967); *In re Holt*, 24 B.R. 696 (Bkrtcy.E.D. Va.1982); *In re Swartz*, 18 B.R. 64 (Bkrtcy. E.D.Va.1982). Courts must strictly construe the exceptions set forth in 11 U.S.C. § 523(a)(2). *See, Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). The objecting creditor must prove the existence of each of these elements by clear and convincing evidence. *Brown v. Buchanan*, 419 F.Supp. 199 (E.D.Va.1975).

■ The *Sweet v. Ritter Finance Co.* test outlined above was established under § 17(a)(2) of the old Bankruptcy Act. Section 523(a)(2)(B) regarding false financial statements is the successor to the old § 17(a)(2) and numerous courts, including this Court, have continued to find that the *Sweet v. Ritter Finance Co.* test is most appropriate under § 523(a)(2)(B). *See, e.g., In re Knott*, 32 B.R. 252 (Bkrtcy.E.D.Va. 1983). In addition, many courts have also applied that same test to § 523(a)(2)(A) nondischargeability complaints. *In re Ridgway*, 24 B.R. 780, 784 (Bkrtcy.D.Kan.1982); *In re Smith*, 25 B.R. 396, 398 (Bkrtcy.D.Md. 1982). This Court has also applied the *Sweet v. Ritter Finance Co.* test to § 523(a)(2)(A) complaints. *In re Carneal*, 33 B.R. 922 (Bkrtcy.E.D.Va.1983); *In re Holt*, 24 B.R. 696 (Bkrtcy.E.D.Va.1982); *In re Swartz*, 18 B.R. 64 (Bkrtcy.E.D.Va.1982); *In re Stanley*, No. 79–01701; 80–0026 (Bkrtcy.E.D.Va.1982). After analysis of the applicable case law this Court is satisfied that the *Sweet v. Ritter Finance Co.* test, as outlined above, is an appropriate test for a nondischargeability complaint under § 523(a)(2)(A) as well as under § 523(a)(2)(B). Therefore, this Court will consider both of the plaintiff's bases for nondischargeability under the analysis outlined above.

The plaintiff alleges that the defendants fraudulently obtained money from him by misrepresenting, both by a false financial statement and by express representations, the value of the "Nott stock" pledged to the bank for the loan to Blake. Moreover, the plaintiff alleges that the exact value was represented to him with the intent to deceive him and that he reasonably relied on the oral representations and financial statement in procuring the loan for the Handys. The debtors emphasize that if any such representations were made, they were not made with any intent to deceive the creditor.

(1) *Did the debtors make representations?*

This Court holds that some representation was made to the plaintiff by the financial statement signed by Homer Handy. This Court will not permit the debtor to deny the representation contained as part of the financial statement. In allowing the statement to be used, Homer Handy adopted the representation as his own. Individuals must be mindful of consequences associated with uttering statements of financial condition. The representation made in the financial statement, however, is charged only to Homer Handy because no evidence exists that Kathleen was a signatory to the statement or in any other way, oral or otherwise, adopted the representation as her own. In fact, she testified that she did not know of the existence of the financial statement at the time the stock was pledged and the loan was made.

With regard to representations regarding the value of the Nott stock, this Court finds and, thereby, holds that Homer Handy did represent that the Nott stock was intended to be used for his children's education in that it was bequeathed to his wife with the intent of aiding in their education. However, this Court does not find that Homer or Kathleen Handy represented to Blake that the Nott stock had sufficient value to cover all the Handy's children's education.

(2) *Were the representations known to be false when made by the debtors?*

As to the financial statement, this Court is satisfied that Homer Handy did not know that the value placed on the Nott stock in the statement was false when the loan transaction was closed at the Patterson Avenue branch of F & M. Rather, evidence demonstrates that (1) the figure was procured and affixed by F & M and (2) Homer Handy did not know the value of the stock during the time the financial statement was signed, when the statements were made about the children's education, and the stock was pledged and the loans made. As to Kathleen Handy, the facts clearly bear out that Mrs. Handy's participation consisted only of her bringing the unpledged stock to the bank and delivering it as security for the bank's loan to Blake. The fact that the stock, the value of which is questioned, was hers does not make the financial statement her financial statement absent any evidence purporting to show that she offered it as such. Additionally, the fact that she may have benefited from the loan does not make it in and of itself her financial statement. The evidence indicated that the funds were needed by Mr. Handy to cover outstanding checks written by him. Blake makes much of the statement that the Handys intended to use the stock for the education of their children. It is his contention that this statement was intentionally false when made, that it was made to mislead him into thinking the stock had considerable value.

It had been the family understanding that the stock pledged to F & M was a stock which was to be retained by the Handys to be used in the children's education. Both Mr. and Mrs. Handy had that understanding, however, their statements were not such that it was intended to convey an impression that the cash value of the stock would be sufficient to educate all their children to any desired level of attainment. It was more of a precatory statement of intention to retain that stock for that ultimate use. It is that statement, together with the figure placed on the financial statement, setting the value of the stock, that this Court is asked to determine to be clear and convincing evidence that the debtors engaged in fraudulent conduct and further that Blake relied on these statements to his detriment and would not have made the loan if he had known the actual value of the stock.

(3) *Did the debtors make the representations with intent to deceive?*

In signing the financial statement, Homer Handy did not intend to deceive Blake or F & M. Handy had no knowledge of the statement's truth because the value placed on the stock was obtained by the bank and adopted by Homer Handy. Consequently, although this Court does not condone the debtor's act of signing a document containing information not known but subsequently found to be false, this Court nonetheless holds that Homer Handy did not intend to deceive Blake. Homer Handy had no reason to doubt the bank's valuation because the bank had an interest in the transaction (the stock was collateral) and, furthermore, Frank H. Nott, Inc. was a customer of F & M, and, therefore, the bank may have had more information on which to base a valuation of the company's stock than Blake or Handy would have had.

Consideration must be given to the representation that the Handy's intended to use the stock to help educate their children. No evidence was presented demonstrating that Blake requested the stock as collateral or that he would rely on collateral as a precondition to obtaining the loan for the Handys. Had this fact been demonstrated, Handy's representation would be more suspect because Handy would be on notice of Blake's intent to rely on the stock as collateral.

Apparently, the bank requested the collateral, but their reason for so requesting the collateral is not in evidence. Consequently, this Court has not been presented with clear and convincing evidence that any intent to deceive Blake existed and, therefore, this Court holds that the Handys did not intend to deceive Blake.

(4) *Did the creditor rely on the representation?*

With regard to the representations as to the stock's (collateral's) value in the financial statement, no evidence was presented that Blake ever requested collateral. The issue of collateral appears to have arisen only upon request by F & M. Moreover, the notes signed by Handy to Blake suggest that Blake was relying on future commissions as collateral and not the stock. Therefore, the evidence suggests that Blake did not rely on the representations made by Handy or that if Blake did rely, such reliance was not reasonable.

As to the second representation, that the stock was to be used to help finance the children's education, if Blake relied, such reliance was not reasonable without some more specific representation as to the stock's value. A reasonable person would seek a more definite valuation of collateral on which he is relying as a precondition to loaning money.

Therefore, the evidence presented does not satisfy the requirement that in seeking nondischargeability of a debt pursuant to § 523(a)(2) the creditor prove by clear and convincing evidence that he relied on the debtor's representation.

(5) *Did loss result from representation?*

Absent reasonable reliance by Blake, any loss sustained by Blake did not result from representations made by the Handys. What appears to have happened in the instant case is that Blake's altruistic tendencies prevailed over his business sense.

The Court is left with the distinct impression, more from the accumulation of all the evidence than from one single factor that neither Mr. or Mrs. Handy had any clear understanding of the value of the stock, that any comments made by them relating to the children's education with regard to the stock was a sincere belief not intended to establish or communicate a specific value, that the value placed on the stock by the bank as set out on the financial statement was not a deception on the part of Mr. Handy and that if relied upon by Blake such reliance was induced because Blake believed the bank thought the stock to be adequate collateral, that Blake was relying more on anticipated commissions for the repayment of his loans to the Handys, and that Blake was generously attempting to assist the Handys at a trying time which, unfortunately, resulted in a loss to Blake. For these reasons, this Court must hold that it has not been presented with clear and convincing evidence that the Handys obtained money by false pretenses, false representations, or by a false financial statement. Consequently, the defendants' obligations to Blake are dischargeable in bankruptcy.

An appropriate Order will issue.