In re Shirley A. JONES a/k/a Shirley A. Uku, Shirley A. Ukwu, Debtor.

George LAMBRAKIS, Plaintiff,

v.

Shirley A. JONES, Defendant.

Bankruptcy No. 84–00297.
Adv. No. 84–0204.

United States Bankruptcy Court, District of Columbia.

April 30, 1985.

432

Gary P. Primavera, Washington, D.C., for plaintiff.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

AUBREY E. ROBINSON, Jr., Chief Judge.

Presently before the Court is the Complaint of George Lambrakis opposing the discharge of a debt owed to him by Shirley A. Jones, debtor in a Chapter 7 proceeding. Jurisdiction in this matter is vested in the Court pursuant to 11 U.S.C. § 105 and Bankruptcy Rule 7001; the Complaint is made pursuant to 11 U.S.C. § 523(a)(2)(B). This matter having come before this Court, sitting in Bankruptcy, upon the Order of Recusal of Bankruptcy Judge George F. Bason, Jr., and upon consideration of Plaintiff's Complaint to Determine Dischargeability, the Answer filed by Defendant, the hearing held February 21, 1985 and the entire record herein, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. On September 17, 1982, Defendant Shirley A. Jones completed a detailed "Confidential Information Sheet: and supplemental "Memorandum," Plaintiff's Exhibits 1 and 2, for the purpose of obtaining a lease of real property, located at 4705 Butterworth Street, N.W., Washington, D.C., from Plaintiff through his real estate agent, Snider Brothers Management, Inc. This "Confidential Information Sheet" and "Memorandum" contain certain statements regarding Defendant's financial condition on the date of her application which Plaintiff alleges were false and materially misleading.

2. The "Confidential Information Sheet" and "Memorandum" also contain a number of notations. The parties have stipulated that these notations were made by an employee of Plaintiff's agent, Ms. Jean Lester. The parties have further stipulated that the notations represent Ms. Lester's efforts to verify the information

Harris Ammerman, Washington, D.C., for defendant.

provided by Defendant. The handwritten references include checks to the Credit Bureau (CBI) and to Defendant's supervisors. The notation concerning CBI on the "Confidential Information Sheet" includes the statement "No Derogatory Inquiries." On the "Memorandum," immediately to the right of Defendant's indication of child support payments of $250 bi-weekly, Ms. Lester wrote "history: 7 yrs. direct."

3. The notation made by Ms. Lester regarding Defendant's child support payments is somewhat ambiguous. Mr. Paul Hudson, president of Snider Brothers Management, Inc. and Ms. Lester's supervisor, testified that he understood from the notation that Defendant had received child support for seven years and that she received the sum of $250 directly from her former husband. Defendant testified that she did not tell Ms. Lester that she had received child support for seven years; however, she did indicate to Ms. Lester and reiterated in her testimony that the support payments were made directly to her.

4. Defendant also testified that she had received regular payments from 1981 until October 1982, when her ex-husband became unemployed and ceased to make payments to her. There was no further evidence presented regarding either the amount of child support or when payment ceased. On this issue, the Court has before it only Defendant's testimony.

5. The supplemental "Memorandum" attached to the "Confidential Information Sheet" submitted by Defendant also stated that she was employed on a full-time basis at the Department of State Federal Credit Union and the law firm of Ginsburg & Feldman. There is no question that this information was correct. Defendant indicated that her salary at the Federal Credit Union was $18,000 annually; her salary from Ginsburg & Feldman was also listed as $18,000. Defendant testified that her stated salary with the Federal Credit Union was $14,500 but that she earned sufficient overtime to raise her actual annual salary to $18,000. Defendant was employed with the Federal Credit Union during the day and with Ginsburg & Feldman during the evenings and on weekends.

6. The notation made by Ms. Lester regarding Defendant's employment with the Federal Credit Union gives indication that Defendant's supervisor, Mr. Tuckfelt, had been contacted and Defendant's claims confirmed. The notation further indicated: "probability of continued—good." The notation regarding Defendant's employment with Ginsburg & Feldman indicates that her supervisor, Ms. Margaret Cades, had confirmed Defendant's statement that she was employed at a salary of "$18,000 plus." Ms. Lester also noted that Defendant was employed as a "Night operator."

7. Atlantic International Trading Corporation was listed as Defendant's fourth source of income in the "Memorandum." The information concerning this income indicates that the work was performed at Defendant's convenience from her home. During her testimony, Defendant described this self-employment as "consulting work" through which she maintained approximately five (5) clients. Remuneration for services performed was received on a strictly commission basis; at the time Defendant completed the "Confidential Information Sheet" and the "Memorandum" she expected to receive approximately $5,000. This amount is described as "an average figure" on the "Memorandum."

8. Defendant testified that she did not receive commissions owed her because political trouble in Nigeria, where her clients resided, prevented money from being transferred to the United States. There was no evidence presented to refute that Defendant had expected to receive commissions amounting to approximately $5,000.

9. The "Confidential Information Sheet" listed several assets and liabilities which Plaintiff alleges were materially false and misleading. First, Plaintiff complains that Defendant inaccurately claimed ownership of a 1978 Fiat. Defendant testified that the automobile was jointly owned by herself and her finance, Mr. Lawrence Ukwu. The "Confidential Information Sheet" does not inquire concerning the na-

ture of ownership. Plaintiff presented no evidence to suggest that the fact of joint ownership materially affected the decision to lease the premises to Defendant.

10. Colony House Furniture is named as a creditor on the "Confidential Information Sheet." Defendant indicated that her balance on the debt owed to this creditor was $760. However, in response to Plaintiff's interrogatories, Defendant admitted to owing $1,609.63 to Colony House Furniture. She explained the considerable difference by stating that, at the time she applied to lease Plaintiff's property, she intended to pay the difference to the creditor in cash when the furniture was delivered. Defendant further testified that she did in fact make the cash payment. Plaintiff failed to provide evidence demonstrating that this testimony was false or that the size of the debt influenced the decision to lease the property to Defendant.

11. Finally, Plaintiff alleges that Defendant knowingly and falsely misstated the monthly payment due on a loan obtained from the National Capital Central Federal Credit Union (NCCFCU), mistakenly referred to as "NCVA" on the "Confidential Information Sheet." Defendant indicated that the amount of her monthly payment was $100; in fact, she was obligated to pay an additional amount of $35.00 per month. Defendant failed to provide complete information concerning this debt without satisfactory explanation; however, the evidence presented did not persuade the Court that this was a material omission.

12. The testimony of Mr. Hudson indicated that the mathematical calculation used to determine whether an applicant would be considered eligible to lease property focused solely on the level of income. Mr. Hudson testified that before he, as agent for Plaintiff, would recommend that a prospective tenant be accepted, that tenant would be required to demonstrate that she had an annual income equal to the yearly rent plus an estimated cost for utilities multiplied by the number of dependents, including the applicant.

13. Mr. Hudson testified that this calculus yielded a required annual income of $42,600 in order for an applicant to be eligible to rent Plaintiff's property. However, upon performing the same equation, based upon the figures given by the witness the Court finds that the actual figure yielded is $42,300. In any case, Defendant's application demonstrated an annual income of $47,000, more than enough to qualify. Accordingly, she was recommended to Plaintiff and accepted as a tenant based upon both her statements and the inquiries made by Ms. Lester.

14. Almost immediately upon being accepted as a tenant, Defendant began having difficulty meeting her obligation to Plaintiff. Both her check for the application fee and her checks for the deposit on the property were returned with the stamp "Refer to Maker." Apparently, Defendant explained this to Plaintiff's satisfaction and while there was a similar incident in November, the rent due through December 1982 was eventually received. *See* Defendant's Exhibit 1. Plaintiff alleges that Defendant's difficulty in paying the rent, occurring so soon after obtaining the lease, gives evidence that the information stated in her application was false.

15. Defendant vacated the premises at 4705 Butterworth Street, N.W., Washington, D.C. on August 31, 1983. Her occupancy lasted 11 months. In a complaint filed by Plaintiff in the Superior Court for the District of Columbia, she was assessed damages for non-payment of rent. Judgment against her was found in the amount of $3,205.28. On May 30, 1984, Defendant filed a voluntary petition for relief under Chapter 7. Plaintiff filed a timely objection to the discharge of the debt under 11 U.S.C. § 523(a)(2)(B), resulting in the proceedings before this Court.

16. Given the evidence before it, the Court is not persuaded that Defendant's difficulties were more than coincidental misfortune. While it may well look suspicious to one in Plaintiff's position, the fact is that Defendant testified, without contradiction, that her former husband became

unemployed just one month after she had taken possession of Plaintiff's property. Since October 1982 she testified that she has received no child support payments from him. She also testified, again without contradiction, that, unexpectedly, she did not receive the commission amounts due her from Nigeria.

17. Mr. Paul Hudson, Plaintiff's witness, testified to the effect that the amount of annual income was primarily relied upon to predict whether an applicant would be in a position to assume a lease obligation. There is no evidence in the record to indicate that Plaintiff might have considered Defendant's application in a different light if the fact the additional debt for furniture or an additional $35.00 per month payment obligation had been known. There are no allegations that Defendant failed to disclose any other debts which she had at the time she submitted her application. The Court finds that Plaintiff did not introduce sufficient evidence to adequately refute Defendant's testimony. The record presented in this case simply cannot justify a finding that the financial statement was materially false.

## CONCLUSIONS OF LAW

1. The Bankruptcy Code provides that a debtor may be denied discharge if he has obtained money or property through a materially false or misleading written statement. Specifically, 11 U.S.C. § 523(a)(2)(B) provides that:

A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

Based upon this provision, Plaintiff alleges that he is entitled to an exception to the discharge of Defendant's debt to him. Section 523(a)(2)(B) is the successor to the old 11 U.S.C. § 17(a)(2). The application of the provision regarding false financial statements has remained basically unchanged. *In re Handy*, 35 B.R. 912, 914 (Bankr.E.D. Va.1983).

2. For a debt to be nondischargeable under 11 U.S.C. § 523(a)(2)(B), courts have held that the objecting creditor must prove:

(1) That the bankrupt made the representations; (2) that at the time the representations were made they were materially false (i.e., substantially untrue); (3) that the debtor made the representations with the intention and purpose of deceiving the creditor (or that they were made carelessly or with reckless indifference to the actual facts); (4) that the creditor relied on such representations; and (5) that the creditor sustained the damage alleged as the proximate result of the representations having been made.

*In re Tomeo*, 1 B.R. 673 (Bankr.E.D.Pa. 1979); *see also, In re Matera*, 592 F.2d 378 (7th Cir.1979); *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va.1967). The burden of proof in this case lies with Plaintiff. "At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving his objection." Bankruptcy Rule 4005. Moreover, Plaintiff must establish each of the five elements by clear and convincing evidence. *In re Handy, supra* at 914; *In re Hunter*, 36 B.R. 28, 31 (Bankr.N.D.1983). Upon consideration of each of the five elements, the Court concludes that Plaintiff has failed to bear this burden; therefore, the request for an exception to discharge shall be denied.

3. The first element, "that the bankrupt made the representations" is not in dispute. Defendant readily admits to having submitted the written "Confidential Information Sheet" and supplemental "Memoran-

dum." She contends that the financial information was provided truthfully and in good faith. Likewise, the last element, that Plaintiff allowed Defendant to lease the property as a proximate result of the financial statements, is not in dispute.

4. However, Defendant argues that *at the time the representations were made,* they were substantially and materially accurate. Because the only evidence on this issue is Defendant's testimony, Plaintiff has failed to establish that the information regarding Defendant's expected income was untrue on September 17, 1982, the relevant date. The fact that her financial circumstances changed and the statements became inaccurate predictors of Defendant's income after the time she assumed the lease of Plaintiff's property has no bearing in this matter. The critical fact is that *at the time* Defendant submitted the "Confidential Information Sheet" and "Memorandum" the statements made therein were not materially false.

5. Moreover, the third element was not proven by the evidence. Plaintiff did not establish that Defendant made any of the statements with the intent of deceiving or with reckless indifference to her actual financial condition.

■ 6. The fourth element of the test, that the objecting creditor demonstrate actual reliance is also unproven. A creditor must show more than a mere contractual right to rely. *Matter of Bisbach,* 36 B.R. 350, 353 (Bankr.W.D.Wisc.1984). The testimony clearly demonstrated that independent checks were made of the financial information. Moreover, the Court concludes that the discrepancies in the debts owed and reported by Defendant were not material and satisfactorily explained.

■ 7. To the extent that Plaintiff has attempted to demonstrate a false representation through Defendant's failure to disclose particular facts about her debts to the NCCFCU and to Colony House Furniture, the Court notes that "such an omission or silence does not constitute a representation, and, therefore, cannot be a represen-

tation the 'debtor knew was false.' " *In re Bailey,* 35 B.R. 224 (Bankr.E.D.Va.1983).

■ 8. In conclusion, the Court notes that the failure to establish any one of the five elements of the test for nondischargeability of a debt must result in denial of Plaintiff's objection. Since in this case, Plaintiff failed to establish that the existing discrepancies were material, that there was actual reliance, or that the income information was substantially untrue at the time the statements were made, discharge of the debt will be allowed.

■ 9. However, on the issue of attorney's fees, requested by Defendant in her Answer to the Complaint pursuant to 11 U.S.C. § 523(d), the Court concludes that Defendant's request should be denied. Section 523(d) provides that:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceedings if the court finds that the position of the creditor was not substantially justified except that the court shall not award such costs and fees if special circumstances would make the award unjust.

The relevant legislative history found in the note following the section states that the purpose of the provision is to discourage creditors from engaging in the practice of initiating suits of this type in the hopes of obtaining a settlement from honest debtors anxious to save attorney's fees. Such a practice is contrary to the spirit of the bankruptcy laws and is therefore sanctioned.

10. Some courts have found that only cases of "clear inequity" relieves an unsuccessful creditor from the prospect of paying a discharged debtor's costs of defending against a suit to determine nondischargeability. These courts would agree that "[a]bsent a finding of clear inequity, § 523(d) does not provide for judicial discretion in this matter." *In re Carmen,* 723 F.2d 16, 18 (6th Cir.1983).

11. Other courts, the majority, have found that the phrase "clearly inequitable" provides an exception which must be construed in light of the facts of each case. Especially since the plaintiff's burden is such a heavy one, courts have refused to award attorney's fees when any one element of the five-part test has been met. *In re Archangeli*, 6 B.R. 50, 53 (Bankr.D.Me. 1980), held that plaintiff had demonstrated the intent to deceive but not detrimental reliance on the written statement. Therefore, it was found to be "clearly inequitable" to award attorney's fees in this case.

12. Likewise, in this case it would be "clearly inequitable" for the Court to award attorney's fees to Defendant when the circumstances gave rise to Plaintiff's suspicion of fraud. It is clear to the Court that this suit was brought in good faith. Consequently, Defendant's prayer for attorney's fees shall be denied.