In re Charles Wyndell CROUSE, Debtor.

Fred M. COTTRELL, Plaintiff,

v.

Charles Wyndell CROUSE a/k/a C.W.
Crouse a/k/a C. Wyndell
Crouse, Defendant.

Adv. No. 81–0552(1).
Bankruptcy No. 81–01895(1).

United States Bankruptcy Court,
E.D. Missouri, E.D.

Jan. 19, 1983.

Robert W. Miller, Kirkwood, Mo., for plaintiff.

Jack J. Gilbert, Clayton, Mo., for debtor-defendant.

## MEMORANDUM OPINION

ROBERT E. BRAUER, Bankruptcy Judge.

Pending for disposition is a Complaint filed by the Plaintiff, Fred M. Cottrell, seeking a declaration of non-dischargeability of a debt owing to him by the Debtor Defendant herein, Charles Wyndell Crouse, and praying judgment against the Defendant in the sum of $7,000 plus interest and attorney fees. Plaintiff alleges that the Defendant obtained a loan from Plaintiff by means of false pretenses, a false representation, or actual fraud, to bring his Complaint within the nondischargeability provisions of 11 U.S.C. § 523(a)(2)(A).

## FINDING OF FACTS

In 1971, Plaintiff and Defendant were business associates. Both had been employed for many years by the Singer Corporation, and, in 1971 both worked on the same floor in the company's New York City offices. In September, 1971, the Defendant asked the Plaintiff for a $5000 loan. The Defendant stated that he had an opportunity to exercise an option to purchase a house for Defendant and his family, and needed the loan in order to exercise the option.

The Plaintiff stated initially that he was not in a financial position to help the Defendant. However, the Plaintiff added that if he were able to sell his former residence in Houston, he might then be in a position to help the Defendant. A few weeks later the Defendant asked the Plaintiff for a portion of the money stating that he (the Defendant) thought he could "hold off" the owner of the property a while longer if he could produce some portion of the option price. Plaintiff said that he still did not have the funds but could possibly borrow the money pledging his shares of Singer Corporation stock as collateral. On October 19, 1971, the Plaintiff and his wife borrowed $1500 from their bank and pledged fifty shares of Singer stock as collateral for the loan. On October 20, 1971, the Plaintiff endorsed his Bank's check over to the Defendant. Defendant, in turn, signed a ninety-day promissory note payable to the Plaintiff for $1500 at 7½ percent annual interest. The Plaintiff promised to lend to the Defendant an additional $3500 upon the sale of the Plaintiff's Houston real estate.

The Plaintiff sold his Houston real estate in December, 1971. He loaned to the Defendant $3500 on December 20, 1971. On December 20 or 21, 1971, the Defendant signed a new promissory note for $5000 with interest at seven percent payable by July 20, 1972. (See Plaintiff's Exhibit 4).

In January, 1972, a management shakeup occurred at Singer Corporation, which resulted in the Defendant's being demoted, receiving a reduction in salary, and being transferred from New York City to Florida. The Defendant did not pay off the promissory note by July 20, 1972, and the Plaintiff did not press the Defendant for repayment at that time. Plaintiff testified that he knew from conversations with the Defendant, that the Defendant could not repay the loan when the note came due. Plaintiff was cognizant, also, of a "series of personal problems" suffered by the Defendant during this period of time, including Defendant's employment difficulties.

The Plaintiff maintained contact with the Defendant and periodically requested repayment of the loan. The Plaintiff mailed to the Defendant a series of annual statements reminding the Defendant of his obligation and containing Plaintiff's calculation of accrued interest. Each statement was signed by the Defendant and returned to the Plaintiff. (Plaintiff's Exhibit 6). Defendant made his first payment to the Plaintiff on July 21, 1978, in the amount of $100. Six additional payments of $100 each were made between October 17, 1978, and November 23, 1979. On December 20, 1979, the Defendant executed a new promissory note for $8,000 at seven percent interest payable at the rate of $100 per month and due thirty days after the date on the note. The Defendant did not pay the note in thirty days but he did make a $100 payment on January 20, 1980, on March 10, 1980, and on June 15, 1980. The Defendant made no further payments. His payments totaled $1000.

In a letter dated March 10, 1980, the Defendant informed the Plaintiff, "My wife does not know and never knew of this transaction and I do not intend that she know." (Plaintiff's Exhibit 5). The Plaintiff testified that he and his wife were "shocked" to learn that the Defendant was concealing this loan from his wife. Because the Plaintiff and his wife thought they were enabling the Defendant to buy a home for himself and his family, they became suspicious of Defendant's unwillingness to discuss the loan with his family. The Plaintiff became concerned that perhaps the Defendant had not used the loan proceeds to purchase a home. Subsequent investigation revealed that the Defendant had exercised the real estate option and purchased his home in Dix Hills, New York, on August 27, 1971, approximately two months before Plaintiff's first loan to the Defendant and four months before Plaintiff's second loan to the Defendant. The Defendant presented no evidence to show how he used the $5000 borrowed from the Plaintiff.

## CONCLUSIONS OF LAW

■ The Defendant raised as an Affirmative Defense the New York statute of Limitations relating to a cause of action based on fraud, alleging that Plaintiff's Complaint is barred by the Statute of Limitations. N.Y.Civ.Prac.Law (McKinney) § 213(8) provides that an action based on fraud must be commenced within six years from the time the Plaintiff "discovered the fraud, or could with reasonable diligence have discovered it." N.Y.Civ.Prac.Law (McKinney) § 203(f) provides that where a limitations period "is computed from the time when facts were discovered or from the time when facts could with reasonable diligence have been discovered, ... the action must be commenced within two years after such actual or imputed discovery or within the period otherwise provided, computed from the time the cause of action accrued, whichever is longer." These two provisions have been interpreted together to provide for alternate periods of limitation where discovery of fraud is delayed. A cause of action based on fraud must be

brought within six years from commission of the fraud or within two years of its actual or imputed discovery, whichever is longer. *Schmidt v. McKay,* 555 F.2d 30, 36–37 (2d Cir.1977); *Klein v. Shields & Company,* 470 F.2d 1344, 1346 (2d Cir.1972).

The Defendant contends that the loan was made in 1971 and that a cause of action based on any allegedly fraudulent conduct occurring at that time would be barred by the six-year Statute of Limitations. N.Y. Civ.Prac.Law (McKinney) § 213(8). The Defendant contends also that the Plaintiff could, with reasonable diligence, have discovered any allegedly fraudulent conduct on the part of the Defendant more than two years before Plaintiff's Complaint was filed. Therefore, Defendant asserts that the Plaintiff's cause of action is also barred by the alternate two year Statute of Limitations. N.Y.Civ.Prac.Law (McKinney) § 203(f). The Defendant relies primarily on the contention that, because the date Defendant purchased his family home is a matter of public record, the Plaintiff is placed on constructive notice of the date of purchase, which fact was discoverable in 1971.

The Plaintiff contends that he was under no duty to examine the public records at the time he made the loan to Defendant and that he had no hint of the Defendant's fraud until he received the Defendant's letter of March 10, 1980, and learned that the Defendant was concealing the loan transaction from his wife. Therefore, the Plaintiff alleges that his duty to investigate began on March 10, 1980, and that the two year Statute of Limitations began to run on March 10, 1980.

■ New York courts have held generally that as concerns the running of the statute of limitations, public records constitute notice of fraud appearing or reasonably discoverable therefrom, where the records would have been examined by the defrauded party had he exercised reasonable diligence under the circumstances and such diligence would have resulted in the examination of such records. Annot., 137 A.L.R.

268, 272. *See, e.g. Seely v. Seely,* 164 A.D. 650, 150 N.Y.S. 66 (App.Div.1914); *Burkan v. Ex-Lax, Inc.,* 168 Misc. 735, 6 N.Y.S.2d 740 (Sup.Ct.1938). New York courts have held, at least since 1865, that constructive notice of facts contained in public real property records will be imputed only to subsequent purchasers and incumbrancers, the stated purpose of the recording acts being to protect and notify those two groups. *Mead v. Bunn,* 32 N.Y. 275, 278 (1865); *Seely, supra,* 150 N.Y.S. at 68. Because the Plaintiff is neither a subsequent purchaser nor an incumbrancer of real property, he is not, under New York law, deemed to have constructive notice of facts contained in the public records relating to real property, and I so find.

I find, also, that reasonable diligence did not require the Plaintiff at the time he made the loan and under the facts and circumstances of this case, to search the public records to verify the truth of the Defendant's representations. The Defendant's assertion to the contrary

> ... rests on the mistaken assumption, that a false representation by one of the parties to a contract puts the other *on inquiry* as to its truth. Every contracting party has an absolute right to rely on the express statement of an existing fact, the truth of which is known to the opposite party, and unknown, to him, as the basis of a mutual engagement; and he is under no obligation to investigate and verify the statements, to the truth of which, the other party to the contract, with full means of knowledge, has deliberately pledged his faith.

*Mead v. Bunn,* supra, loc. cit. 280. Therefore, I hold that Plaintiff's cause of action is not barred by the New York Statute Limitations.

The second issue which must be decided is whether or not the Plaintiff's loan was procured "by false pretenses, a false representation or actual fraud" sufficient to bring his Complaint within the nondischargeability provisions of 11 U.S.C. § 523(a)(2)(A). The dischargeability issue raised by the Complaint is to be resolved bearing in mind that the Plaintiff bears the burden of proving, by clear and convincing evidence, that the Debtor has committed an actual or positive fraud upon the Plaintiff, a type of fraud involving moral turpitude or intended wrong—fraud implied in law, or proof of a mere imputation of bad faith, is not sufficient; false representations must be fraudulently false, as the cases say. *In re Taylor,* 514 F.2d 1370 (9th Cir., 1975); *United States v. Syros,* 254 F.Supp. 195, 198 (E.D. Mo.1966).

Five separate elements must so be proved: (1) that the representations were made by the Defendant; (2) that they were false and he knew them to be false (or made with such reckless disregard for the truth as to be tantamount to a wilful misrepresentation); (3) that they were made with the purpose and intention of deception; (4) that the Plaintiff relied on the representations; and (5) that the Plaintiff was damaged thereby. *Taylor, supra. Syros, supra.*

Further, the proof adduced must be considered bearing in mind that exceptions to discharge and dischargeability are to be strictly construed against the Plaintiff, liberally construed in favor of the Debtor, so as to effectuate the Congressional policy of permitting the Debtor a fresh start. *In re Rahm,* 641 F.2d 755 (9th Cir.1981); *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915), *Syros, supra.*

Both the Plaintiff and the Defendant testified that the Defendant told the Plaintiff he needed a $5000 loan to enable him to exercise an option for the purchase of real estate. The Plaintiff testified that he was persuaded to make the loan to the Defendant because the Defendant wanted to purchase a home for the Defendant and his family. The Defendant's reason for the loan was an extremely important consideration to the Plaintiff in his decision to make the loan to the Defendant, and, clearly, Plaintiff relied upon Defendant's representations as to the pretended purpose of the loan. It is undisputed that the Defendant purchased his home in August, 1971, some month prior to the request, some two

months prior to Plaintiff's first loan and some four months prior to the Plaintiff's second loan to the Defendant. The plain inference, from these facts, is that Defendant did not use the loan proceeds in the exercise of an option to purchase real estate, and that he did not use such proceeds to purchase real estate. The Defendant made no attempt to rebut the inference. In fact, Defendant presented no evidence to show how the loan proceeds were used. When asked if Plaintiff's loan might have been used to repay another lender who may have advanced funds to enable the Defendant to purchase his family's home, the Defendant allowed that this was a possibility, but that he had no recollection of repaying an interim lender with funds received from the Plaintiff. Accordingly, judgment is being entered in Plaintiff's favor upon the Complaint.

. . . . .

Plaintiff prays for an award of attorney's fees as part of the judgment.

Plaintiff's loan, to the Debtor, was evidenced by a promissory note dated December 20, 1971, the note being for $5,000, bearing interest at 7% per year. The note does not contain any provision for an attorney's fee.

On December 20, 1979, a renewal note was executed by the Debtor. This note does contain a provision for an attorney's fee, of 20% of principal and interest due.

■ The Complaint, and this Court's judgment, are not predicated upon contract, but upon tort. The 1979 note's provision of an attorney's fee is, consequently, substantively innocuous. And, I do not know of any statute or principle of substantive law which entitles the Plaintiff to an award of counsel fees in successfully prosecuting this kind of tort claim.

■ Plaintiff prays, also, for interest, at the contract rate, 7%. Though this action is in tort, moratory interest would seem to be allowable, the general rule being that interest should be allowed, in cases involving unliquidated damages, where compensation is the basic principle of recovery and where

that compensation can be measured by a definite standard (as, here, the loan of $5,000). See *Janigan v. Taylor* (1 Cir., 1965) 344 F.2d 781, cert. den. 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120, and cases digested in *Damages,* key numbers 67, 69, and *Fraud,* key number 60, Wests Federal Practice Digest, 2nd Series. Moratory interest, at the contractual rate of 7% per year from December 21, 1971, is to be included in the judgment.

Debtor Defendant made payments, to the Plaintiff, of $100 each, on July 21, October 17, and December 31, 1978; on May 27, August 15, October 1, and November 23, 1979; and on January 20, March 10, and June 15, 1980. These payments, when received, did not equal the interest accrued upon the December 21, 1971, note, so that Plaintiff's damages are to be measured by the amount of the loan, $5,000, plus interest thereupon at 7% per year from December 21, 1971 (to this date, interest of $3877.25 is due), less the $1,000 (in interest) paid.

Judgment is being entered this date in favor of the Plaintiff and against the Defendant in the sum of $7,877.25 plus costs.