In re William R. KONCHAN, Debtor.

QUADRA, LTD., an Illinois corporation, and Donald Summers, individually, Plaintiffs,

v.

William R. KONCHAN, Defendant.

Bankruptcy No. 81 B 05272.
Adv. No. 81 A 2592.

United States Bankruptcy Court, N.D. Illinois, E.D.

Jan. 20, 1984.

Jeffrey D. Cohen, Robbins Coe Rubenstein & Shafran Ltd., Chicago, Ill., for plaintiffs.

Alan J. Spitz, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

FREDERICK J. HERTZ, Bankruptcy Judge.

### I.

This matter involves an adversary complaint requesting that this court find that the debtor herein, William Konchan ("Konchan"), committed certain fraudulent acts. If this court finds that Konchan did commit certain fraudulent acts, the plaintiffs' claim would be nondischargeable. The plaintiffs further seek a finding by this court that Konchan violated certain provisions of the Real Estate Brokers and Salesmen License Act. Ill.Rev.Stat. Ch. 111, § 5701 et seq. (1982). After reviewing the respective memoranda of law and considering the testimony of the various parties, this court

reaches the following findings of fact and conclusions of law.

## II.

The events which preceded the filing of this adversary action principally originated in the early part of 1979. Quadra Limited ("Quadra"), a plaintiff herein, was interested in consolidating its commercial operations. Through two of Quadra's corporate officers, namely Donald Summers ("Summers") and William Copher ("Copher"), Quadra approached Gladstone Realtors in an effort to secure new office space for their company. It was during this time that the plaintiffs first dealt with Konchan (July 20, 1983 tr. at 55).

Konchan was a licensed and registered real estate broker and had been employed by Gladstone commencing in 1977. Konchan proceeded to show Summers and Copher various parcels of real estate. During the course of their search, the parties inspected the property that is the subject of this litigation ("Vera Lane Property"). The Vera Lane property is located in Elk Grove, Illinois and in 1979 was undeveloped. The plaintiffs allege that Konchan had represented to them that the property was his.

The parties eventually signed a lease agreement dated March 24, 1979 for the lease of the Vera Lane property together with a building that was to be constructed. The lessor of the property was the First Bank of Oak Park and the lease was to run for a period of six years. The Oak Park bank was invested with the authority of lessor pursuant to land trust number 11638 which was created in March of 1979. Konchan was the sole beneficiary of this land trust. The lessor was to have 120 days from the time a building permit was secured to construct the proposed building.

Quadra directed a check in the amount of $7,750.00 to Konchan in consideration for the obligations that Konchan was to undertake under the terms of the lease agreement. The check, pursuant to Konchan's directions, was made payable to W.R.K. & Associates ("WRK"). The plaintiffs allege that the money was to be considered as a security deposit, representing the first and last months rent due under the terms of the aforementioned lease agreement. Konchan, in turn, endorsed the Quadra check and deposited it into a personal account he held at the LaSalle National Bank ("LNB"). Konchan had several other accounts at the LNB (July 26, 1983 tr. at 17).

The lease agreement specifically provided that the $7,750.00 was to be deposited into a trust account. Nevertheless, Konchan deposited the money into his own personal account. Konchan's prior real estate experience clearly indicates that he had knowledge of the purposes and meaning of what a trust account is. Subsequent to the deposit of the Quadra check, Konchan deposited other monies into the account (July 20, 1983 tr. at 32–34). Konchan alleges that the funds were commingled so that a fund could be created for the construction of the proposed building (*Id.* at 39 & 52).

At no time during the course of the aforementioned activity did Konchan have title to the Vera Lane property. Instead, the testimony indicates that Konchan had been pursuing negotiations with one Rappolo, the owner of the Vera Lane property, for the purchase of the property. The purchase of the Vera Lane property was never consummated. The Quadra check was deposited into the LNB account on July 6, 1979. Thus, Konchan had held the Quadra check for approximately three months before depositing it into his account.

In the meantime, Summers and Copher were becoming increasingly pessimistic over the prospects that a building would be constructed on the Vera Lane property. Numerous discussions relative to the lease were held between the parties. Eventually, the lease was terminated. Shortly thereafter, the plaintiffs requested Konchan to return the Quadra security check. The money was never returned. Konchan ultimately filed a voluntary petition under Chapter 7 of the Bankruptcy Code on May 4, 1981. The plaintiffs then instituted this adversary complaint requesting the relief enumerated in part I of this opinion (*supra* at p. 394). The Illinois Department of Regis-

tration and Education has filed its appearance through the Illinois Attorney General's office in this matter. They have indicated on the record that they would abide by this court's findings relative to the alleged misdeeds perpetrated by Konchan.

### III.

Section 523(a)(2)(A) of the Bankruptcy Code provides that:

(a) A discharge under section 727, 1141, or (b) of this title does not discharge an individual debtor from any debt—...

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—...

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ...

11 U.S.C. § 523(a)(2)(A) (Supp. V 1981).

■ The party seeking to except a debt from the normal discharge provisions, must under section 523 prove the alleged fraudulent activity by clear and convincing evidence. *In re Carneal*, 33 B.R. 922 (Bkrtcy. Va.1983); *In re DeRosa*, 20 B.R. 307, 311 (Bkrtcy.S.D.N.Y.1982). The clear and convincing standard of proof has been more specifically defined as ".... That which establishes in the mind of the trier of fact the firm belief or conviction as to the obligation sought to be established ..." *In re Browning*, 31 B.R. 995, 1000 (S.D.Ohio 1983), *citing In re Hagedorn*, 25 B.R. 666 (Bkrtcy.S.D.Ohio 1982). Furthermore, the provisions of section 523 are to be liberally construed in favor of a debtor, and strictly construed against a creditor in order to effectuate the Code policy of giving the debtor a fresh start. *In re Rahm*, 641 F.2d 755 (9th Cir.1981); *In re Crouse*, 27 B.R. 284 (Bkrtcy.E.D.Mo.1983). A plaintiff must prove the following elements of the alleged fraud before a finding of nondischargeability pursuant to section 523(a)(2)(A) can be entered: 1) the false representation of a material existing fact; 2) made with the intent to deceive; 3) made with either knowledge that it is false or with reckless disregard for its truth or falsity; 4) which

was believed and justifiably relied upon by the other party; 5) with resultant damages. *In re North*, 24 B.R. 523, 528 (Bkrtcy.N.D. Ill.1982); *citing Equitable Life Insurance Co. v. Halsey, Stuart & Co.*, 112 F.2d 302 (7th Cir.1940).

■ Weighing the aforementioned factors together with the testimony of the various parties, this court concludes that the plaintiffs have failed to satisfy the requisite burden of proof necessary for a finding of nondischargeability. Accordingly, this court holds that the Quadra claim is dischargeable in the instant bankruptcy. This court's conclusion is particularly predicated on the conclusion that Quadra failed to prove Konchan's intent to defraud by a clear and convincing standard. Summers and Copher testified that Konchan had indicated to them that the Vera Lane property was his. Konchan denied ever making such a statement. In the absence of any written documentation reflecting the ownership of the property, this court must rely on the testimony of the various witnesses. Having reviewed the testimony and exhibits that were introduced at trial, this court does not feel the plaintiff proved by a clear and convincing standard that Konchan had the intent to defraud.

This court concludes that Konchan's failure to deliver the aforementioned property was instead more akin to a breach of contract. There is some testimony that Konchan had expected to purchase the Vera Lane property (refer to the land purchase contract with Rappolo, *supra* p. 395). Furthermore, if Konchan in his own mind felt that he would never own the property, he would never have gone to the expense and effort of hiring a contractor (See August 11, 1983 tr. 3–8) Finally, this court notes and compares the length of time that the Quadra check was held before it was deposited (three months), along with the signing of the land purchase contract (two weeks after the deposit). The aforesaid evidence when taken as a whole, suggests that Konchan in his own mind thought that he would be able to carry out the terms of the lease agreement.

In the absence of clear and convincing proof that fraudulent misrepresentation had occurred, the mere act of leasing property that one does not own is not in and of itself a fraudulent activity. *Ward v. Luneen,* 25 Ill.App. 160 (1887). *See Wilhoite v. Fastenware, Inc.,* 354 F.Supp. 856, 858 (N.D.Ill.1973) and *Goldberg v. Goldberg,* 103 Ill.App.3d 584, 588, 59 Ill.Dec. 303, 306, 431 N.E.2d 1060, 1063 (1st Dist.1982) ("... a promise to perform an act, although accompanied with an intention not to perform it, is not such a false representation as will constitute fraud."). Similarly, utilizing a "straw" purchaser in the sale of real estate has been held not to constitute a section 523 exception to a discharge. *In re Hansen,* 17 B.R. 342 (Bkrtcy.W.D.Mo.1982). This court's holding comports with the line of cases which dictate that the elements of fraud are never to be presumed. *Matter of Buford,* 25 B.R. 477 (Bkrtcy.S.D.N.Y.1982) (Each element of an alleged fraud must be proved by clear and convincing evidence.). Addressing a second theory of the plaintiff's complaint, negligent misrepresentation by itself is insufficient as a matter of law to constitute a section 523 exception to discharge. *Matter of Brookshire,* 17 B.R. 308, 311 (Bkrtcy.N.D.Ga.1982). Finally, Konchan's counterclaim for breach of damages is necessarily mooted by the conclusion herein.

The final point that this court must cover is whether Konchan's actions violated the provisions of the Real Estate Brokers and Salesmen License Act ("Act"). The Act provides that the commission of any single prohibited act is a violation of that statute. Ill.Rev.Stat. Ch. 111, § 5712 (1982). Rules 450.40 and 450.50 promulgated under that Act provide in pertinent part:

> 450.40(a) ... Each broker shall maintain and deposit in a special account, separate and apart from his personal or other business accounts, all monies belonging to others entrusted to him while acting as a real estate broker, or an escrow agent, or as the temporary custodian of the funds of others and shall keep same on deposit in such account until the transactions are terminated, except to the extent that such monies, or any part thereof, shall be disbursed prior to the consummation or termination in accordance with the agreement of the parties...

> \* \* \* \* \* \*

> 450.40(d) ... Each broker shall deposit only funds received in connection with any real estate transaction in a special account designated as a special account and shall not deposit his own personal funds in a special account, except a broker may deposit from his personal funds, and keep, in any special account an amount sufficient to avoid incurring service charges relating to such special account. Said sums shall be specifically documented as being for a set purpose and the broker shall have proof available that the amount of the funds in the special account does not exceed the minimum amount required by the depository to maintain the account with incurring service charges.

> \* \* \* \* \* \*

> 450.50(c) ... A registrant shall disclose to all parties in any transaction, in writing, any and all interest he or it does or may have as an owner, purchaser, seller, renter, or lessor, or otherwise in the real estate constituting the subject matter thereof or in such transaction, directly or indirectly.

68 Ill.Admin.Code 450.00 *et seq.*

In the instant case, it is clear that Konchan deposited the Quadra check in a personal account. Furthermore, it is clear that Konchan commingled funds with the Quadra money for purposes other than set forth in the lease. Consequently, in that Konchan was a licensed real estate broker, his actions certainly violated the provisions of the above Act. Since the Act provides for the creation of a recovery fund to reimburse persons who are aggrieved due to violations of the Act, Ill.Rev.Stat. Ch. 111, § 5716 (1982); this court directs the Illinois Department of Education and Registration to pay Quadra $7,750.00 as reimbursement for loss of the security deposit money.

### IV.

In conclusion, this court finds that: 1) the plaintiffs herein have failed to prove by clear and convincing evidence that Konchan's actions rose to the level that is necessary for a finding of nondischargeability pursuant to section 523; 2) Konchan's counterclaim for breach of the lease agreement is denied; 3) Konchan violated Rules 450.-40(a)(d) and 450.50(c) of the Act; and 4) the Illinois Department of Education and Registration is to pay Quadra $7,750.00 as reimbursement. Counsel for Quadra is to submit a draft order in accordance with this opinion within five days.