**In re Gustav KRAUSE and Joan Krause, Debtors.**

**Angeline MORSOVILLO, Plaintiff,**

**v.**

**Gustav KRAUSE and Joan Krause, Defendants.**

**Bankruptcy No. 83 B 1355.
Adv. No. 83 A 1290.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Nov. 9, 1984.

Dean J. Sodaro, Chicago, Ill., for plaintiff.

Clay Mosberg, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

### I.

This matter came before the court for trial of the plaintiff's ("Morsovillo") complaint to determine the dischargeability of a certain debt pursuant to section 523(a)(2) and (6) of the Bankruptcy Code. Morsovillo seeks a finding by this court that the debtors ("the Krauses") obtained an extension of credit through fraudulent misrepresentation or, alternatively, that the Krauses maliciously and willfully converted Morsovillo's collateral by granting a security interest in the collateral to Riverdale Bank. Having reviewed all exhibits and memoranda filed in this matter and having heard testimonial evidence, the court, in accordance with Bankruptcy Rule 7052, renders the following findings of fact and conclusions of law.

### II.

The events surrounding the filing of this adversary complaint arose when the Krauses began to negotiate with Morsovillo to purchase a delicatessan which was a part of the estate of Morsovillo's brother. On June 19, 1981, Morsovillo entered into an agreement to sell the business to the Krauses. An agreement was reached

which provided that the Krauses were to pay Morsovillo $10,000 cash and $35,000 on December 22, 1981. The lease for the business premises was assigned to the Krauses. Under that agreement, the Krauses took possession and operated the business while Morsovillo retained title to the equipment and fixtures. Morsovillo did not perfect her security interest. The Krauses were not able to pay the balance due in December of 1981. In February of 1982, the Krauses, after being refused a loan in the amount of $50,000, received one for $30,000 from the Riverdale Bank. As security for that loan, the Riverdale Bank was granted a second mortgage on certain real estate and a security interest in the restaurant equipment and fixtures. Subsequently, the Krauses paid Morsovillo $17,500 and signed a six-month promissory note for the balance due. In August of 1982, the Krauses applied for an additional loan from the Riverdale Bank. That loan was denied. The Krauses filed a Chapter 7 petition on January 31, 1983 which listed Morsovillo as a creditor.

Morsovillo filed an adversary complaint alleging that the Krauses obtained the six-month extension by representing to Morsovillo that they had been unable to obtain any loan from the Riverdale Bank. Further, Morsovillo alleged that the Krauses granted the Riverdale Bank a security interest in the equipment and fixtures knowing that Morsovillo retained title in the same property.

### III.

The first allegation of Morsovillo's complaint is governed by section 523(a)(2)(A) of the Bankruptcy Code which provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ...

11 U.S.C. § 523(a)(2)(A)(1982).

The creditor seeking to except a given debt from discharge must prove the elements of fraudulent activity by clear and convincing evidence. *In re Konchan,* 36 B.R. 393, 396 (Bankr.N.D.Ill.1984) (citing *In re Carneal,* 33 B.R. 922 (Bankr.N.D. Va.1983) and *In re DeRosa,* 20 B.R. 307, 311 (Bankr.S.D.N.Y.1982)). The clear and convincing standard of proof has been more specifically defined as "... That which establishes in the mind of the trier of fact the firm belief or conviction as to the obligation sought to be established...." *Id.* Furthermore, the provisions of section 523 are to be liberally construed in favor of a debtor and strictly construed against the creditor in order to effectuate the Code policy of giving the debtor a fresh start. *Id.; In re Rahm,* 641 F.2d 755 (9th Cir. 1981) *cert. den.* 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157; *In re Crouse,* 27 B.R. 284, 287 (Bankr.E.D.Mo.1983).

The elements necessary to render a debt nondischargeable under section 523(a)(2)(A) are: 1) the false representation of a material existing fact; 2) made with the intent to deceive the creditor; 3) made with either knowledge that it is false or with reckless disregard for its truth or falsity; 4) which was believed and justifiably relied upon by the other party; 5) with resultant damages. *In re Konchan,* 36 B.R. 393 (Bankr.N.D.Ill.1984) (citing *In re North,* 24 B.R. 523 (Bankr.N.D.Ill.1982); *Equitable Life Insurance Co. v. Halsey, Stuart & Co.,* 112 F.2d 302 (7th Cir.1940)). The creditor must establish each and every element before a finding of nondischargeability will be entered.

### IV.

In the present case, although substantial evidence has been presented which is relevant to each of the necessary elements, the evidence simply did not satisfy the requisite standard of proof. Each element was not established by clear and convincing evidence. First, although there

was testimony that the Krauses stated that they were unable to obtain a loan, there was also testimony to the effect that they had merely stated that they were unable to obtain a loan for the full amount sought. There was also testimony of a disinterested bank employee which indicated that she had communicated with the plaintiff's spouse and that he was aware that the Krauses were in the process of obtaining a loan. Thus, the false representation has not been established by clear and convincing evidence.

Second, intent to deceive the creditor was not established by clear and convincing evidence. The debtors paid Morsovillo a substantial amount of money. Had they intended to do other than pay the balance when possible and continue to operate the business, it is highly unlikely that they would have paid Morsovillo as much as they did. Additionally, the fact that Mr. Morsovillo spoke to a Riverdale Bank employee regarding the Krauses' loan tends to negate the inference that Morsovillo relied upon any statement made by Krause as required by section 523(a)(2)(A). In sum, the evidence adduced at trial did not establish the requirements by clear and convincing evidence. The plaintiff has not adduced evidence sufficient to support a finding of nondischargeability under section 523(a)(2)(A) of the Bankruptcy Code.

### V.

The complaint in the present matter also alleges conversion of the plaintiff's security interest, which is governed by section 523(a)(6) of the Code. That section provides in relevant part:

> (a) A discharge under section 727 ... Of this title does not discharge an individual debtor from any debt—
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C. § 523(a)(6) (West 1984). That exception includes conversion of a security interest. *In re Meyer*, 7 B.R. 932 (Bankr. N.D.Ill.1981). This district has interpreted in considerable detail the requirements for a finding of nondischargeability under section 523(a)(6). *United Bank of Southgate v. Nelson*, 35 B.R. 766 (N.D.Ill.1983). The *Nelson* court thoroughly discussed the willful and malicious requirements of section 523(a)(6). *Id.* The court held that in the context of a debtor who sells secured property, "willful and malicious injury means a deliberate or intentional act in which the debtor knows his act would harm the creditor's interest and proceeds with that knowledge." *Id.* at 776.

However, the debtor contends that the instant facts constitute a mere technical or innocent conversion which will not render a debt nondischargeable. *Id.* at 777 (*citing Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934)). The court disagrees. The *Nelson* court articulated factors from which the debtor's knowledge of the consequences of his act could be inferred. Those factors are: 1) the debtor's experience in business; 2) concealment of the transaction; and 3) an admission that the debtor read and understood the security agreement. 35 B.R. at 766.

Admittedly, some evidence in this case supports the theory that the conversion which occurred here was innocent or technical. The debtor testified, and it was not controverted, that she was not an experienced business person. Neither was there evidence that the transaction was concealed. Krause testified that she did not know that she was impairing Morsovillo's rights in the collateral when she signed the Security Agreement with Riverdale Bank. However, Mrs. Krause gave the following answer to the following question:

Q. Well, if you didn't know you were doing anything wrong and you signed these documents transferring these things to the bank for security, how did you think that Angeline Morsovillo would be protected in the event that there was a failure to pay the note and the bank took the stuff?

A. At the time I didn't know there was going to be failure to pay the note.

Tr. at 110. The above testimony insinuates strongly that Mrs. Krause understood the documents she signed. It is not required that she intended to harm the creditor. Purposefully signing the security agreement with the knowledge that Morsovillo retained title to the fixtures and equipment is adequate to support a finding of nondischargeability pursuant to section 523(a)(6), and the court so holds.

Having determined that a nondischargeable debt exists, the next question which the court must resolve is the appropriate measure of damages to be awarded Morsovillo. The fair market value of the converted collateral is the appropriate measure of damages for conversion. See *In re Lewis*, 31 B.R. 83, 87 (Bankr.W.D. Okla.1983). According to evidence adduced at trial, the value of Morsovillo's security was $3,900.00. Although plaintiff attempted to establish a higher "going concern" value for the collateral, this court finds that measure inappropriate. Under the agreements between Morsovillo and the Krauses, Morsovillo retained no interest in the business premises. Hence, there is no way she could have reestablished the business as a going concern had she been able to foreclose upon her security interest.

Therefore, the fair market value of the collateral is the appropriate amount to be declared nondischargeable.

THEREFORE, IT IS HEREBY ORDERED that the debt be and hereby is declared nondischargeable in the amount of $3,900.00. It is further ordered that judgment in favor of Angeline Morsovillo be and hereby is entered in that amount plus costs and interest at the statutory rate from February 5, 1982, the date of the conversion to the time of filing the bankruptcy petition.