In re Gerhard H. ROELLEKE and Beverly K. Roelleke, a/k/a Beverly K. Freemen.

Bankruptcy No. 380–00750.
Adv. No. 381–0221.

United States Bankruptcy Court,
C. D. Illinois.

Jan. 26, 1982.

John C. Wooleyhan, Quincy, Ill., for Gerhard A. and Beverly Roelleke.

Thomas J. Ortbal, Quincy, Ill., for Robert and Gloria Mayer.

BASIL H. COUTRAKON, Bankruptcy Judge.

Plaintiffs commenced an adversary proceeding against defendants seeking to have a debt owed by defendants to plaintiff declared non-dischargeable pursuant to Section 523(a)(6) of the Bankruptcy Code (11 U.S.C. 523(a)(6)).

The facts elicited at the hearing on the plaintiffs' complaint and essentially taken from their well-written brief are as follows. The plaintiffs Robert and Gloria Mayer sold certain personal property, business equipment and assets to defendants pursuant to an installment title retention contract. The property was identified by the plaintiffs and testimony was given by plaintiffs about its value. Testimony was also given by George Mating, President of State & Eighth Shopping Plaza, Inc. (State & Eighth). Mating testified that State & Eighth had leased certain restaurant premises to the plaintiff prior to the sale of their business. Subsequent to the sale of the plaintiffs' business to the defendants, the defendants leased the restaurant premises from State & Eighth and conducted a restaurant therein known as "Gerhard's Restaurant". Mating also testified that he had represented the plaintiffs as the broker in the sale of the business by plaintiffs to defendants. As president of State & Eighth and as the broker for this particular sales transaction, he was familiar with most of the equipment and assets which were sold by the Mayers to defendants. Mating had also been in the leased restaurant premises on several occasions subsequent to the sale of the business by the Mayers.

Mating further stated that on or about November 17, 1980 State and Eighth obtained a court order granting it possession of the restaurant premises due to the defendants' default in the payment of their rent. On or about that date State & Eighth entered the premises. The defendants in their Answer and Affirmative Defense contend that the locks were changed and they were unable to re-enter. The plaintiffs introduced testimony that the locks were never changed.

Referring to the Bill of Sale which was identified and admitted into evidence, Mating was able to identify from his memory several pieces of equipment and assets which had been sold by the Mayers to the defendants that were no longer in the restaurant premises on November 17, 1980.

Following the court order, State & Eighth allowed certain venders and suppliers access to the restaurant premises to recover various property, including certain miscellaneous vending machines and equipment on which some held security interests. Walter Muegge, the Secretary of State & Eighth, testified that he saw Gerhard Roelleke on the premises at this time, but only to point out to Pasquel, a repossessing creditor, where Pasquel's property was.

On or about November 24, 1980, the equipment and assets which remained in the restaurant premises were sold, by private sale, to Walter Muegge, Corporated Secretary of State & Eighth. The Property, following the sale, was actually moved from the leased area (the restaurant premises) to a storage area within the same building.

Witness Dick Gibson testified that on or about December 9, 1980, he made an inventory of the property which had been removed from the restaurant premises and relocated in the storage area of State & Eighth. There were a number of items from plaintiffs Exhibit No. 2 (the Bill of

Sale listing the inventory and assets sold by Mayers to defendants) which were not on Gibson's inventory, which had been on the premises at the time it was first examined by George Mating on November 17, 1980. Among these items were: a three keg cooler with tap; a fourteen foot hotel grill table (although the grill hood was on the inventory); a thirty inch Star grill; a number 15 deep fryer; and a G.E. Steam warmer. In addition, Gibson's inventory had only five of the six booths which had been located in the premises and only ten of sixteen tables. There was also a bar sink which Mating had observed in the premises prior to Gibson's inventory as well as an air purifier, a fourteen inch grill and two double booths, which were not among the assets in Gibson's inventory.

Mating and Muegge testified that State & Eighth did not sell or transfer any of the property (other than the bulk sale to Muegge) any time after they had obtained possession of the restaurant premises on or about November 17, 1980.

Following the close of the plaintiff's case, the defendants moved for a Directed Verdict. As this cause of action is being heard without a jury I will proceed according to Federal Rule of Civil Procedure 41(b) in which a Directed Verdict is more properly termed a Motion to Dismiss for Insufficiency of Evidence.

Under Rule 41(b) I need not view evidence and draw inferences in the light most favorable to the plaintiff but may weigh evidence and choose the most reasonable inferences in finding facts and concluding law. *Penn-Texas Corp. v. Morse*, 242 F.2d 243 (7th Cir.).

In 523(a)(6) I must find that there has been a conversion that is willful and malicious. Willful and malicious need not be spite or ill-will. Yet for the taking to be found willful it must be deliberate or intentional. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1935). For the taking to be found malicious it can be implied from an unlawful act done intentionally without justification or excuse. *In re McCloud*, 7 B.R. 819 (Bkrtcy.1981).

In none of the evidence put on by the plaintiff is there any direct showing that the Roellekes did any taking at all. I am asked to infer that taking mainly from evidence showing that property, some of which was of a large durable nature, was missing when the landlord took possession on November 17, 1980 and more property was missing December 9, 1980 after the remaining property had been sold and moved.

Unfortunately the weight of the evidence (even assuming the Roellekes had a key to the premises after November 17) is just not enough for me to make that inference. There are too many other inferences to be drawn. Some of the missing property could have worn out during the time the Roellekes were in business. Other property could have been stolen while the business was shut. Property could have been taken while the business was open for other creditors to remove their property. Property could have been taken or lost in transit to storage after the sale to Muegge.

To find willfulness there must be a deliberate or intentional taking. Yet even if I had been able to infer a taking I would have to make an impermissible inference upon an inference that the taking was deliberate or intentional. So without any direct evidence about deliberateness or intention *no* inferences can be drawn about any willfulness. Of course then nothing can be said about malice.

Defendant's motion is granted. Mr. Wooleyhan will draw an Order containing findings of fact and conclusions of law consistent with this Opinion.