**In re Paul BLAIR, Helen June Blair, Debtors.**

**The NEW RICHMOND NATIONAL BANK, Plaintiff,**

v.

**Paul BLAIR, Helen June Blair, Defendants.**

Adv. No. 1–82–0291.
Related Case No. 1–82–01355.

United States Bankruptcy Court, S.D. Ohio, W.D.

Nov. 23, 1982.

Robert H. Welch, II, Milford, Ohio, for plaintiff.

Wayne F. Wilke, Cincinnati, Ohio, for debtors.

### DECISION

BURTON PERLMAN, Bankruptcy Judge.

Defendants, debtors in the related joint Chapter 7 case, are being sued by plaintiff, The New Richmond National Bank, (hereafter "Bank"), a creditor of defendants. The objective of the complaint filed by plaintiff is for a judgment on grounds that the debt owed it by defendants is nondischargeable. The case came on for a bench trial, at the conclusion of which we reserved decision.

Because they are admitted in the answer, the following facts set out in the complaint are to be taken as true. Thus, debtors are obligated to plaintiff on two delinquent accounts in the amount of $2,088.78 and $7,254.25 respectively. These debts arose in connection with the purchase by defendants of a truck and an automobile, plaintiff being secured in its two debts by these two vehicles.

It is the position of plaintiff that their debts should not be discharged, pursuant to 11 U.S.C. § 523(a)(2)(A), because the debts were incurred by false pretenses and repre-

sentations. It would appear that plaintiff is relying also upon § 523(a)(2)(B) because the testimony at the trial centered largely around the circumstances surrounding the completion, to the extent that they were completed, of two loan applications regarding defendants. Particularly in issue is the information contained therein regarding home ownership by these defendants.

The first loan application bears the date January 15, 1981. It is signed only by defendant Paul Blair. This application was filled out in the living room of defendants, the information being taken by one Henderson, who was selling defendants a vehicle. Apart from name, residence, and employer information, the application contains only a description of the vehicle. The application contains an entry that defendants own their home and that there is no mortgage on it. Henderson did not testify at the trial. The Blairs testified that Paul Blair signed the blank form, and Henderson said that he would fill it out later, and evidently he did so.

The second application was attended to at the Bank. Defendants went there and met with John Greer, a vice president of the Bank in January 1982. During the interview, which lasted some 15 or 20 minutes Mrs. Blair left to get her check stubs and unemployment record because Greer indicated that he wanted to see them. Greer spent some time on the telephone on other matters while defendants were there. In addition to the foregoing, we find as a fact that Greer in extending the loan relied upon the fact that defendants had had thirteen or fourteen prior loans with the Bank and these had always been repaid. The loan application contains the number "15,-000.00" along side the word "home". The second application was not signed by either of the Blairs. At the trial, Greer testified that defendants told him that they owned their home. There is a conflict in the testimony, for the Blairs deny having said this. In fact, at that time defendants did not own their home, having transferred it to their daughter in 1978.

In *In re Hospelhorn,* 18 B.R. 395, 5 C.B. C.2d 660, 662 (Bkrtcy.S.D.Ohio, 1981) we stated the pertinent law applicable to § 523(a)(2)(A) as follows:

"To establish a claim for obtaining money or property by false representation under Sec. 17(a)(2) of the Bankruptcy Act, plaintiff must prove (1) that the claimed representations were made; (2) that at the time they were made defendant knew they were false; (3) that they were made with the intention and purpose of deceiving plaintiff; (4) that plaintiff relied on such representation; and (5) that the creditor (here plaintiff) sustained the alleged loss and damage as the proximate result of the representations having been made. *In re Taylor* 514 F.2d 1370, 1373 (9th Cir.1975), citing and approving *Sweet v. Ritter Finance Co.* 263 F.Supp. 540, 543 (W.D.Va., 1967)."

It should be noted that § 523(a)(2)(B) regarding a false statement in writing in the statute itself contains the elements that the statement be materially false, that there be reasonable reliance, and that the statement was made with intent to deceive.

After carefully considering the evidence in this case, we conclude that intent to deceive and reliance were not proved by plaintiff, certainly not sufficiently to meet the standard of clear and convincing evidence which is required of a plaintiff in a case such as this. There is nothing in the record other than the bare statement of a bank officer that he "relied" upon the representation of home ownership in making the loan, to support the proposition that the loan would not have been made in the absence of such a representation. It accords with common experience that the Bank would rely upon the many prior loans that defendants had taken and repaid. Furthermore, we are satisfied that the plaintiff was swayed by the income situation of defendants. We are not persuaded that a misrepresentation on the occasion of the loan in 1982 regarding home ownership was in fact made. The testimony regarding the interview, its brevity, the interruptions on the telephone, the absence of any signature on the loan application by either defendant,

suggests an atmosphere of haste and inattention. This atmosphere would be enhanced by the knowledge of prior successful loan repayments as well as by the fact that what was being considered was a secured loan, collateralized by the vehicle being purchased by defendants.

In the light of the foregoing review, we find for defendants on the issues raised in the complaint, and will order a dismissal of the complaint.

The foregoing constitutes our findings of fact and conclusions of law.