**In re Ernest L. HAZELWOOD, Jr., Debtor.**

**RICHMOND METROPOLITAN HOSPITAL, Plaintiff,**

v.

**Ernest L. HAZELWOOD, Jr., Defendant.**

**Bankruptcy No. 83–01517–R.**
**Adv. No. 83–0366–R.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Sept. 17, 1984.

Kenneth W. Paciocco, Richmond, Va., for plaintiff.

Sterling H. Moore, Richmond, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court upon the filing of a complaint by Richmond Metropolitan Hospital ("Hospital") against the debtor, Ernest L. Hazelwood, Jr., ("Hazelwood") to determine the dischargeability of a debt arising out of medical services provided by the Hospital to the debtor from August 16 to August 24, 1983. After considering the evidence adduced at trial and the briefs and pleadings submitted by counsel, this Court renders the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code in this Court on October 12, 1983. Subsequently, the Hospital filed its complaint to determine the dischargeability of a debt on December 7, 1983. An amended complaint was filed by the Hospital on December 20, 1983 alleging a debt owed to the Hospital by the debtor in an amount totalling $2,037.50 for medical services rendered to the debtor between August 16 and August 24, 1983. The Hospital seeks to have this debt determined nondischargeable under 11 U.S.C. § 523 of the Bankruptcy Code.

The evidence at trial established that the Hospital requires, as a condition of gaining admittance, that any potential patient assign in writing to the Hospital any right to payment. The purpose of this procedure is to allow the Hospital to bill the insurance carrier directly and thus be assured of payment.

Hospital records indicate that the debtor applied for and was admitted to the Hospital on August 16, 1983 complaining of a lumbar strain in the back. At the time of admission these records also indicate that the debtor made an assignment of insurance benefits by which he agreed to authorize payment directly to the Hospital. One day after being discharged, on August 25, 1983, the debtor wrote a letter to his insurance agent, Winters-Oliver Insurance Agency, Inc., notifying them of his intent to revoke the assignment to the Hospital and requesting that the insurance company forward any payment for services rendered to either himself or his attorney. The debtor's insurance company, State Capital Insurance Company, issued a check made out

to the debtor for $3,852.12 which included reimbursement for various bills including that of the Hospital. On September 19, 1983, Hazelwood picked up the check from Winters-Oliver. The proceeds from the insurance check were not used to pay Hazelwood's debt of $2,037.50 owed to the Hospital.

The Hospital was at the time unaware of the events which had transpired concerning the debtor's revocation of the assignment and the receipt and disbursement of the proceeds of the insurance check. The debtor had not given notice to the Hospital of his revocation of assignment. It was not until sometime in mid-November 1983 that the Hospital became aware that the debtor's assignment of insurance benefits had been revoked.

## CONCLUSIONS OF LAW

The Hospital contended at trial that Hazelwood at the time he entered the Hospital and made the assignment of insurance benefits fraudulently intended to later revoke the assignment and use the proceeds for other purposes to the detriment of the Hospital. The Hospital contends such conduct by Hazelwood renders the debt nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(2)(A). That section of the Code permits a bankruptcy court to deny discharge as to any debt incurred by a debtor relative to the obtaining of money, property, or services by either false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A).

■ This Court has had occasion in the past to set out the essential elements which must be proved in order to make out a case under 11 U.S.C. § 523(a)(2)(A). In *In re Carneal*, 33 B.R. 922 (Bankr.E.D.Va.1983), this Court held that an allegation of false representation must be made out by showing: (1) that the debtor made the representations; (2) that at the time of making the representations he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4)

that the creditor relied on such representation; and (5) that the creditor sustained the alleged loss and damage as a result of the representations having been made. *Id.* at 925 (citing *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va.1967); *In re Holt*, 24 B.R. 696 (Bankr.E.D.Va.1982); *In re Swartz*, 18 B.R. 64 (Bankr.E.D.Va.1982); *In re Dawson*, 16 B.R. 70 (Bankr.E.D.Va. 1981); *In re Lieberman*, 14 B.R. 881 (Bankr.E.D.Va.1981). Each of these elements must be proved by clear and convincing evidence. *In re Carneal*, 33 B.R. 922, 925 (Bankr.E.D.Va.1983) (citing *Brown v. Buchanan*, 419 F.Supp. 199 (E.D.Va.1975)).

■ With respect to the first element, the plaintiff's evidence at trial sought to prove that any representations made by Hazelwood to the Hospital necessarily stemmed from the assignment of insurance proceeds to the Hospital. Due to the fact that the Hospital's policy was not to admit patients unless and until they had assigned their right to receive payment, and it was shown at trial that Hazelwood was informed of this policy, it is this Court's opinion that Hazelwood's knowledge of the policy and signature on the assignment is a representation to the Hospital that the debtor agrees to abide by the conditions of the Hospital with respect to treatment. This Court concludes that if a debtor represents that he is voluntarily relinquishing a right through an assignment because of conditions placed on the receipt of services which he is about to receive, the representation necessarily includes as a corollary that the debtor will not then revoke the assignment to defeat the agreement between the parties. In this case, Hazelwood at a minimum represented to the Hospital that in contracting for medical services he would later pay for those services. Thus, the Court concludes that the Hospital has met its burden by showing at the threshold that representations were made.

■ Consideration of elements two and three may be taken together. There was no direct evidence produced at trial of any intent to defraud or knowledge of the falsi-

ty of the representations made to the Hospital. Rather, the evidence by the Hospital was entirely circumstantial. However, circumstantial evidence is sufficient for a finding of intention to defraud for purposes of § 523(a)(2)(A). The circumstantial evidence in this case indicates that Hazelwood had debts which he listed in his petition in the amount of $230,780.00 and with total assets being listed in the amount of $101,-540.00. The evidence indicates that the amount of indebtedness did not change by over $5,000.00 between August 16, 1983 when Hazelwood was admitted to the Hospital and the time of filing the petition on October 12, 1983. Thus, the debtor had already accumulated a tremendous amount of debt at the time he made the assignment.

The Court concludes that not only did Hazelwood need cash, but Hazelwood was also under the impression that the assignment was revocable. There is no evidence that Hazelwood learned at any time after making the assignment that it may or may not be revocable. Rather, the evidence tends to show that Hazelwood thought the assignment was revocable at the time he entered into it. Although the assignment was not in fact revocable, the fact that Hazelwood thought it was is evidence bearing on his intent at the time of entering into the assignment. Further, the evidence produced at trial attested to the fact that Hazelwood attempted to revoke the assignment the very first day out of the Hospital. The earliest possible date Hazelwood could revoke the assignment and still be assured of receiving complete medical treatment was after discharge from the Hospital. The Court finds that the fact that no significant time passed between discharge from the Hospital and the attempted revocation is significant in bearing on the subjective intent of Hazelwood at the time he entered into the assignment on August 16, 1983.

There is also additional evidence of Hazelwood's bad faith in dealing with the Hospital. Hazelwood did not notify the Hospital of the revocation of the assignment nor did Hazelwood attempt to make payment on the Hospital bill. Rather, Hazelwood succeeded in persuading the insurance company to pay the money directly to him. Hazelwood then used the money for other purposes and did not pay anything to the Hospital.

■ The foregoing circumstantial evidence of Hazelwood's subjective intent at the time of making the representations by way of assignment is countered by Hazelwood's testimony that he had no intent to defraud nor were his representations false. Hazelwood's testimony was that he did not form the intent to revoke the assignment and use the insurance proceeds for other purposes until after his release from the Hospital. However, Hazelwood's testimony is not credible and this Court is satisfied that the weight of the circumstantial evidence demonstrates that Hazelwood, regardless of the legal inability to do so, intended to revoke the assignment of insurance benefits at the time it was made. As such, the evidence is clear and convincing that Hazelwood knew the representations were false at the time they were made and that he intended to deceive the Hospital with respect to his true intentions. The Court concludes that the second and third elements of § 523(a)(2)(A) have been established.

■ As to the fourth element, the Hospital has demonstrated that it relied to its detriment on the assignment in granting medical services to Hazelwood. Hospital policy is to refrain from admitting anyone who has not made such an assignment. In addition, the Hospital verifies at the time of admission whether a patient has any insurance benefits. In the case at bar, the evidence was that Hazelwood had adequate insurance benefits and that the Hospital verified same on the date of admission. In light of these facts, the Court concludes that the Hospital's actual reliance on the representations made by Hazelwood in making the assignment of insurance benefits to it at the time of admission is sufficient for purposes of § 523(a)(2)(A).

■ Finally, with respect to the fifth element, there is no doubt that the creditor

in this suit sustained a loss and damage as a result of the representations having been made. The evidence was undisputed that the Hospital had not been paid. As a result, the Court finds that the creditor in this case has sustained a loss in the amount of $2,037.50. This Court concludes that the creditor, Richmond Metropolitan Hospital, has made out a case under § 523(a)(2)(A) by clear and convincing evidence and, thus, the Court finds for the creditor and holds this debt to be nondischargeable.

■ The foregoing, however, does not completely dispose of the issues. Evidence was introduced at trial, and a claim made by the creditor Hospital, that the debt under consideration in this case was also nondischargeable under 11 U.S.C. § 523(a)(6). The latter section states that a debt may be determined by the Court to be nondischargeable "for willful and malicious injury by the debtor to another entity or to the property of another entity." Inasmuch as there was no objection at trial by the debtor either to the introduction of evidence on the claim or the assertion of the claim itself, the Court finds that the debtor consented to the trial of the § 523(a)(6) claim and it is, thus, incumbent on this Court to address the issue. See, F.R.Civ.P. 15(b); James & Hazard, *Civil Procedure* § 5.6 (2d ed. 1977).

As stated above, § 523(a)(6) would deny dischargeability for the willful and malicious injury to another entity or its property. The legislative history of this section indicates that the language of § 523(a)(6) was intended to include tortious conversion of the property of another. See, 124 Cong. Rec.H. 11,095–6 (Sept. 28, 1978); S. 17,412–13 (Oct. 6, 1978). The construction of § 523(a)(6) to include conversion is a carry-over from § 17(a)(2) of the Bankruptcy Act of 1898, as amended. See, 3 Collier on Bankruptcy, 15th ed., ¶ 523.16, 523–126.

■ A plaintiff seeking to base a claim on § 523(a)(6) for conversion must establish in the first instance that a tortious conversion has occurred. If the plaintiff can meet that burden then he must also demonstrate that the conversion was willful and malicious. 11 U.S.C. § 523(a)(6).

■ The conversion which must be proved by the plaintiff for purposes of § 523(a)(6) is "an act of dominion or control wrongfully asserted over another's property inconsistent with his ownership of it.... [I]t is essential that the [plaintiff] show that the converted item is indeed [his] property." *In the Matter of Lambillotte*, 17 B.R. 256, 258 (Bankr.M.D.Fla.1982). It has also been held that to "establish a cause of action in conversion a plaintiff must show it has an immediate and superior right to possession of the allegedly converted material." *In the Matter of D.H. Overmyer Co., Inc.*, 19 B.R. 750, 754 (Bankr.S.D.N.Y. 1982).

■ The statute requires in addition that any tortious conversion proved be also "willful and malicious". 11 U.S.C. § 523(a)(6). Thus, a conversion which is merely innocent or technical or a mere unauthorized assumption of dominion without willfulness or malice is not sufficient to constitute conversion under the Code. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). Nor is the mere breach of a contract sufficient to constitute tortious conversion. *In the Matter of Morris L. Haynes*, 19 B.R. 849, 9 B.C.D. 226 (Bankr.E.D.Mich.1982).

■ This Court has held that the term "willful" as used in § 523(a)(6) of the Bankruptcy Code means deliberate or intentional. See, *In re White*, 18 B.R. 246, 248 (Bankr.E.D.Va.1982). The Bankruptcy Reform Act of 1978 overrules *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), a case which had construed the term "willful" injury to include the "reckless disregard" of another entity or its property. See, *In re Fussell*, 15 B.R. 1016, 1022 (W.D.Va.1981) (citing H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 363 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 77–79 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787). Further, for the conversion to be "malicious", it need not be motivated by hatred, illwill or spite but is

sufficient if the conversion results from "a wrongful act done intentionally and without justification or excuse." See *In the Matter of Grace*, 22 B.R. 653, 655–56 (Bankr.E.D.Wis.1982); *In re Roelleke*, 18 B.R. 53, 55 (Bankr.C.D.Ill.1982); *In re Fussell*, 15 B.R. 1016, 1022–23 (Bankr.W.D.Va. 1981); *In re McCloud*, 7 B.R. 819, 824–25 (Bankr.M.D.Tenn.1980).

▇▇▇ The law under § 523(a)(6) is fairly well settled. It remains to be determined in this case, however, whether the plaintiff has met his burden under the statute and the cases. In the case at bar, there was an assignment by the debtor to the creditor Hospital. The assignment was in consideration of medical services to be rendered by the Hospital. Assignments are by nature of two types: revocable and irrevocable. An assignment is irrevocable if it is given for consideration. See, Murray, *Murray on Contracts*, § 293 at 598 (rev. ed. 1974). Moreover, a gratuitous assignment which is ordinarily revocable may become irrevocable if the assignee reasonably relies on the assignment to his detriment and the assignor should have reasonably expected that such reliance might be induced. *Id.* at 601.

▇▇▇ This Court concludes based on the facts that the assignment was irrevocable inasmuch as it was given in consideration for medical services to be rendered by the Hospital. Therefore, Hazelwood's revocation of the assignment on August 25, 1983 was unlawful. The assignment on August 16, 1983 divested Hazelwood of any right to collect the proceeds under the insurance policy. Although not having the right to collect the proceeds, he nevertheless proceeded to cash the insurance check and take dominion over the proceeds. These acts by the debtor were proven at trial and are sufficient to show "an act of dominion or control wrongfully asserted over another's property inconsistent with his ownership of it." *In the Matter of Lambillotte*, 17 B.R. 256, 258 (Bankr.M.D. Fla.1982). The plaintiff Hospital has proven sufficient ownership of the proceeds by evidence that medical services in the

amount of $2,037.50 were performed for the benefit of the debtor in addition to the irrevocable assignment of the proceeds to the Hospital. As a result, the Hospital has clearly shown that it has an "immediate and superior right to possession of the allegedly converted material." *In the Matter of D.H. Overmyer Co., Inc.*, 19 B.R. 750, 754 (Bankr.S.D.N.Y.1982). The Court concludes, therefore, that the requisite tortious conversion has been established for purposes of § 523(a)(6).

▇▇▇ The evidence adduced at trial also demonstrates that the conversion was willful and malicious. As stated above, the term willful means intentional and deliberate. There can be no doubt that Hazelwood's assertion of dominion and control over the proceeds of the insurance check was intentional and deliberate. Moreover, this Court also finds that Hazelwood's conduct was malicious in that it resulted "from a wrongful act done intentionally and without justification or excuse." *In the Matter of Grace*, 22 B.R. 653, 655–56 (Bankr.E.D. Wis.1982). This Court heard no evidence at trial of any justification or excuse for Hazelwood's revocation of an irrevocable assignment. Such a revocation was unlawful and, thus, malice can be properly implied. See *In re Roelleke*, 18 B.R. 53, 55 (Bankr. C.D.Ill.1982).

This Court's conclusion that the debtor's conduct amounts to a willful and malicious conversion is supported by the recent decision of *In re Lavitsky*, 11 B.R. 570 (Bankr. W.D.Pa.1981). In *Lavitsky* an adversary proceeding was filed against the debtor by a plaintiff who was a plastic surgeon who had rendered surgical services to Mr. Lavitsky. The plaintiff/doctor had submitted his bill for surgical services to Mr. Lavitsky's insurer, Pennsylvania Blue Shield. The insurer issued four checks in payment of those services all of which were delivered to Mr. Lavitsky. The first check received by Mr. Lavitsky was forwarded to the plaintiff/doctor. Three subsequent checks received by Mr. Lavitsky were not forwarded to the plaintiff/doctor. The Bankruptcy Court for the Western District

of Pennsylvania held that Mr. Lavitsky's personal use of the proceeds of those insurance checks was a willful and malicious conversion of the property of another within the meaning of 11 U.S.C. § 523(a)(6) thereby making the debt nondischargeable. This Court fully concurs in the reasoning of *Lavitsky*. The instant matter is an even stronger case than that of *Lavitsky* for a finding of willful and malicious conversion. In *Lavitsky* there was no irrevocable assignment which was unilaterally and unlawfully revoked by the debtor.

This Court is similarly in accord with the reasoning of such related cases as *In the Matter of Grace*, 22 B.R. 653 (Bankr.E.D. Wis.1982), where it was held that a debtor who had assigned his right to receive payment under a promissory note and then collected the proceeds of the note and used them for his own purposes was guilty of a willful and malicious conversion of the property of another entity which made the debt nondischargeable under § 523(a)(6).

In summary, this Court holds that Mr. Hazelwood's debt to Richmond Metropolitan Hospital in the amount of $2,037.50 is nondischargeable under § 523(a)(2)(A) for obtaining services by false pretenses, false representation, or actual fraud, and for the reasons stated above, it is likewise nondischargeable under § 523(a)(6) as being a debt for willful and malicious injury to another entity or to the property of another entity.

An appropriate Order will issue.