In re Steve COOK, Debtor.

UNITED VIRGINIA BANK, Plaintiff,

v.

Steve COOK, Defendant.

Bankruptcy No. 83–01554–R.
Adv. No. 83–0357–R.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Feb. 4, 1985.

---

Barry W. Norwood, Richmond, Va., for plaintiff.

James F. Parkinson, III, Richmond, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court upon the complaint of United Virginia Bank ("Bank"), seeking a determination by this Court that a certain loan made to the debtor, Steve Cook ("Cook"), is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (B), § 523(a)(4), and § 523(a)(6). After a trial on the merits on October 31, 1984 at which time the Court heard the evidence of the parties, the Court ordered the filing of briefs and set a hearing for final arguments. At the hearing on final arguments on December 11, 1984, the Court heard the argument of counsel. At the conclusion of the hearing, the Court took the matter under advisement. Upon consideration of the evidence adduced at the hearing on October 31, 1984, as well as the argument of counsel heard on December 11, 1984, in addition to the briefs, exhibits and pleadings filed in this matter, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The difficulty in this case is in ascertaining from the conflicting testimony, exhibits, and statements of counsel the events which transpired in connection with the obtaining of two loans by the defendant Steve Cook, from the plaintiff, United Virginia Bank. Irrespective of this difficulty, the Court, sitting as the trier of facts, has pieced together what it believes occurred in connection with this case which gave rise to a complaint by the Bank seeking to except from discharge a debt in the amount of $4,000 owed by Cook arising from one of the two loans.

In the summer of 1981, Cook decided to go into the restaurant business. Being without the necessary capital to fund such an enterprise Cook visited a branch of the Bank in August of 1981. Cook met the branch manager of the Bank, Mr. Douglas R. Bing ("Bing"), and made arrangements for a $6,000 loan. The note for the loan was executed by Cook on August 11, 1981. The note itself indicates that the collateral for the loan was to be the inventory and receivables of the business. Also executed in conjunction with the note was a document entitled "Inventory, Accounts, and General Intangibles Security Agreement" dated August 11, 1981 stating that the collateral for the loan would be inventory, accounts, and general intangibles. Despite the clear language of these documents, Bing testified in his deposition in this case that the $6,000 loan was obtained for the purpose of buying some equipment for the restaurant and that the Bank intended to take a purchase-money security interest in that equipment as security for the loan. This clearly was not the case inasmuch as both the note and the security agreement reflect that a security interest was only taken in inventory, accounts, and general intangibles. Cook testified that the loan was not to be secured by any proposed equipment to be purchased, but rather by the inventory to be carried in the restaurant, i.e., the food, etc., and the receivables due and owing to Cook through the operation of the restaurant business.

The note signed on August 11, 1981 was a ninety-day time note which was due on November 11, 1981. As a result of Cook

being ill and in the hospital on or about that date, the note became overdue. In December of 1981, Cook went back to the Bank and negotiated with Bing a conversion of the time note to an installment note plus the letting of a new loan in the amount of $4,000. The Court was not furnished with a copy of the note for the $4,000 loan. The Court does have a copy of an undated financing statement executed by the Bank and Cook. However, it does not reflect which of the two loans it seeks to perfect. The financing statement describes the collateral as "all inventory, receivables, furniture, and fixtures now in existence or hereinafter acquired." The financing statement was filed March 26, 1982. The Court has no way of knowing from this document whether the financing statement relates to the original $6,000 loan or whether it relates to the $4,000 loan. In any event, the Court concludes that even assuming the financing statement related to the loan for $4,000, no security interest was granted or taken by the Bank with respect to any equipment other than the "furniture" and any "fixtures" which were in fact equipment listed on the face of the financing statement itself.

Cook testified and the Bank corroborated that the loan for $4,000 was an installment loan which became due every ninety days on which Cook made no payment of principal, but the evidence is that he did remit the accruing interest in order to induce the Bank to continue to renew the loan. The evidence indicated that Cook has continued to make regular monthly payments on the original loan of $6,000 and this loan is not in issue before the Court.

The periodic renewals of the $4,000 loan continued to occur until May 27, 1983, at which time the Bank alleges the operative events for nondischargeability took place. On May 27, 1983, Cook visited the Bank, the loan again overdue, to seek a renewal as had been done in the past. On this occasion, Cook met with Virginia McDer-

mond, the Bank's loan officer, and Judith F. Irby, the branch manager of the Bank. At this point, the testimony is conflicting. Cook testified that these two representatives of the Bank examined his loan file, extracting at some point a document entitled "C & K Barbeque Equipment & Fixture Inventory July, 1981" ("July 1981 equipment list"). Cook also testified that sometime during the conversation one of these two representatives asked him if he still "had" the equipment used in the restaurant. Cook stated that he had items in storage at his home awaiting the opening of his new restaurant.[1] Cook testified that they did not show him the July 1981 equipment list and that when he stated that certain items were in storage in his home, he was referring to those items found in the handwritten portion of a list attached to Cook's financial statement which he had submitted for the original loan in August of 1981, and which designated property owned by Cook.

In contrast, Mrs. Irby testified that she showed Cook the equipment list dated July, 1981 and then asked him if he still owned any of the equipment on the list. She testified that he affirmed that he did own the equipment and that it was in storage. In fact, however, most of the equipment on the "C & K Barbeque Equipment & Fixture Inventory" was leased, except for certain ladder-back chairs, a convection oven, and other starred items on the list.

The question was posed during the course of these proceedings why such a list as the "C & K Barbeque Equipment & Fixture Inventory July, 1981" had been prepared. Cook testified that Bing had requested in August, 1981 for his files a list of all of the equipment and fixtures in the restaurant including everything which was either leased or owned by Cook. To the contrary Bing, in his deposition, testified that the list was prepared at the time of the December, 1981 transactions. The Court finds that the list was prepared by Cook at Bing's request in August, 1981.

---

**1.** The testimony was that the first restaurant had been closed and that Cook planned to open a new restaurant using some of the same items which had been present in the initial business.

Bing's assertion in his deposition that the July 1981 equipment list was requested by him in December of 1981 for purposes of having a record of the collateral which the bank intended to take a security interest in is not substantiated by the financing statement filed on March 26, 1982 which only takes a security interest in "all inventory, receivables, furniture and fixtures...." Other than possibly the reference to "furniture and fixtures," no equipment is mentioned on the financing statement. Cook, on the other hand, testified that the list dated July, 1981, was given to Bing at his request in August of 1981 merely as a list of all of the contents of the restaurant including those items which were both leased and owned by Cook. The Court finds it much more credible to believe that if Bing had requested an equipment list in December of 1982, the list would not bear the legend "July, 1981" if immediately prepared by Cook. On the contrary, it is much more logical to believe that an equipment list dated July, 1981, was prepared and turned over to the Bank in August of 1981, several weeks later.

Mrs. Irby on behalf of the Bank testified that if she had known that Cook did not own all of the items on the July 1981 equipment list, she would not have renewed the loan to Cook on May 27, 1983. In contrast, Mrs. McDermond testified that "usually these things can be worked out" and would not have denied renewal automatically had she been acting alone. As branch manager, however, Mrs. Irby had the ultimate decision on whether the loan would be renewed.

The note executed by the Bank and Cook on May 27, 1983 indicated that the collateral for the loan was to be restaurant equipment and inventory. Unlike the original loan of August 11, 1981, the Court has no documentation of any security agreement which was signed in conjunction with the execution of this note.

From the testimony of three different witnesses, Mrs. Irby, Mrs. McDermond, and Steve Cook, the Court heard three different statements of the events which transpired on May 27, 1983 in connection with the renewal of this loan. The Court concludes that it is more likely than not that neither of the three parties remembers the entire transaction sufficiently to reflect accurately what transpired. What became apparent from the testimony, however, and which this Court will make a finding of fact, is that a gross misunderstanding took place on May 27, 1983. The Court believes· that Mrs. Irby asked Cook whether he had or owned any equipment from the prior restaurant business. Mrs. Irby, the Court believes, was referring to the July 1981 equipment list. The Court also believes that when Cook answered that he did own some furniture and equipment and that it was stored in his home, he was referring to those items which he actually did own and which were attached to his financial statement submitted to the Bank. As a result of the misunderstanding, the Bank entered into a renewal of the note laboring under a misconception as to the extent of the collateral available to secure the note.

The $4,000 note executed by the Bank and Cook on May 27, 1983 became due on August 25, 1983. No payment was made by Cook in satisfaction of the note. Thereafter, on October 17, 1983, Cook filed a voluntary petition in bankruptcy in this Court. Subsequently, on December 1, 1983, the Bank filed this complaint seeking a determination that the debt was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (B), § 523(a)(4), and § 523(a)(6).

## CONCLUSIONS OF LAW

■ At the start of trial, the plaintiff withdrew its allegations of nondischargeability based on §§ 523(a)(4) and (a)(6). The grounds upon which the Bank now relies in seeking a determination of nondischargeability is 11 U.S.C. § 523(a)(2)(A) and (B).[2] With respect to § 523(a)(2)(A), the

---

**2.** 11 U.S.C. § 523(a)(2). A discharge under section 727, 1141, or 1328(b) of this title does not

discharge an individual debtor from any debt—

law in this district is clear as to what showing a plaintiff must make in presenting its *prima facie* case of nondischargeability. The elements are: (1) that the debtor made the representations; (2) that at the time of making the representations the debtor knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained the alleged loss and damage as a result of the representations having been made. *In re Hazelwood,* 43 B.R. 208, 211 (Bankr.E.D. Va.1984); *In re Carneal,* 33 B.R. 922 (Bankr.E.D.1983); see also *Sweet v. Ritter Finance Co.,* 263 F.Supp. 540, 543 (W.D. Va.1967). In addition, the majority of courts having considered the matter, including the bankruptcy courts in this district, have held that each of these elements must be proved by clear and convincing evidence. *In re Hazelwood,* 43 B.R. 208, 211 (Bankr.E.D.Va.1984); *In re Carneal,* 33 B.R. 922, 925 (Bankr.E.D.Va.1983).

▮ The distinction between § 523(a)(2)(A) and (a)(2)(B) is that the former subsection relates to the obtaining of money, property, or services either by false pretenses, false representations, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition, while the latter subsection makes actionable a materially false statement in writing respecting the debtor's or an insider's financial condition on which the creditor reasonably relied and which the debtor caused to be made or published with the intent to deceive. The Fourth Circuit has construed § 523(a)(2)(B) to apply to all statements by the debtor respecting the debtor's financial condition and need not be a formal written financial statement such as a "typical balance sheet or a profit and loss statement." *In re Steinburg,* 744

F.2d 1060, 12 B.C.D. 466, 467 (4th Cir.1984). The conclusion of the Fourth Circuit and supported by a clear reading of § 523(a)(2) is that false representations or false pretenses which are transmitted orally respecting the debtor's financial condition are not actionable under § 523(a)(2). This is due to the fact that statements respecting a debtor's financial condition are specifically excluded from § 523(a)(2)(A) and oral statements are specifically excluded from § 523(a)(2)(B).

The task for this Court is to determine what conduct engaged in by Cook permits the Bank to seek to have this debt declared nondischargeable and then to characterize the conduct so that it may be properly analyzed either as falling within § 523(a)(2)(A) or § 523(a)(2)(B) or not proscribed by the statute at all. In this regard, the Bank asserts that on May 27, 1983, the renewal date, the debtor falsely represented that he owned property which he in fact did not own but only leased, that he knew that the representation was false, that the representation was made with the intent to deceive the Bank, that the Bank relied on the debtor's representation, and the Bank sustained a loss as a result of the false representation having been made. The Bank further contends that on May 27, 1983, Cook obtained a renewal of credit by using the equipment list dated July, 1981 which was materially false, concerned the debtor's financial condition, was caused to be made or published by the debtor with the intent to deceive, and on which the creditor reasonably relied.

▮ The Court concludes at the threshold that an equipment list submitted by a borrower to a bank purporting to be a list of property owned by the borrower to secure a loan is a statement in writing

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or
    (B) use of a statement in writing—

    (i) that is materially false;
    (ii) respecting the debtor's or an insider's financial condition;
    (iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and
    (iv) that the debtor caused to be made or published with intent to deceive.

respecting the debtor's financial condition. In *Steinburg*, the Fourth Circuit stated that "[a] debtor's assertion that he owns certain property free and clear of other liens is a statement respecting his financial condition. Indeed, whether his assets are encumbered may be the most significant information about his financial condition." *Id.* at 1061, 12 B.C.D. at 467. In this case, a possibly even more significant bit of information about the debtor's financial condition was, in the first instance, the debtor's assertions about his ownership of the property which may be used as collateral by the Bank. This information must be elicited by the Bank even before it can be determined whether or not the property is free and clear of liens. Thus, this Court may proceed to analyze the equipment list as a written statement "respecting the debtor's ... financial condition" in the context of § 523(a)(2)(B). With respect to the oral representation ostensibly made by the debtor that he owned certain equipment, the Court finds that this statement would also be a statement "respecting the debtor's ... financial condition" and inasmuch as the statement was oral rather than written, the statement is, under the authority of *Steinburg*, not actionable under § 523(a)(2).

■ This Court concludes that not only does Cook's purported misrepresentation that he owned all of the equipment contained on the July 1981 equipment list not fall within the provisions of § 523(a)(2), and even if it were assumed *arguendo* that the statement was a false representation, the Bank would still fail under § 523(a)(2)(A) inasmuch as this Court has found, as the trier of fact, that the Bank representatives misconstrued the July 1981 equipment list to have been a list submitted by Cook of equipment he owned when in fact it was an ambiguous listing of all the property in the initial venture, and, because of Cook's misconstruing the nature and purpose of the. Bank's questions, the Court concludes that Cook's answers were not made with the intent and purpose of deceiving the creditor. Thus, the Bank could not have met its burden of proof by clear and convincing

evidence of an intent to deceive under § 523(a)(2)(A) even if it is assumed the statement falls under that subsection's provisions.

■ With respect to the allegations of the Bank that the July 1981 equipment list submitted by Cook was a false financial statement within the meaning of § 523(a)(2)(B), this Court has previously concluded that if a borrower submits a document which on its face purports to be a list of property owned by the borrower for purposes of securing the loan, then that list may be considered under the *Steinburg* decision to be a statement in writing respecting the debtor's financial condition. This Court must now consider whether the July 1981 equipment list in this case meets that test and then proceed to consider whether the other elements of a § 523(a)(2)(B) claim have been met by the Bank in this case. In this regard, the Court must conclude after an examination of the July 1981 equipment list that it does not purport to be on its face a list of property owned by Cook. The document is merely entitled "C & K Barbeque Equipment & Fixture Inventory July, 1981." The document consists of three pages of enumerated items with several of the items containing an asterisk next to the designated number. This asterisk tells the reader that these items are "personal items, will not stay." In no other manner is ownership designated or implied. Thus, the document cannot be materially false in and of itself inasmuch as it merely purports to be what it is—a list of equipment and fixtures present in the restaurant in July, 1981. The plaintiff's *prima facie* case under § 523(a)(2)(B) fails on this point. In addition, because the equipment list contains asterisks, designating some personal items which will not remain at the restaurant, the document tends to imply that the non-asterisked items either are not owned by the debtor or are owned and will stay. In either event, the ambiguity of the document itself coupled with the other financial information available in the Bank's files makes it unreasonable for the Bank to have

relied solely on this list in making its determination of whether or not to renew a loan which had been renewed several times in the year prior to the May 27, 1983 transaction. There is no evidence that the Bank made inquiry as to whether there were other existing secured liens on the equipment held by other lenders, or whether in fact the equipment was already being utilized as collateral for the $6,000 loan, and, if so, whether the value of the equipment would adequately secure an additional loan of $4,000. The July 1981 equipment list contained no valuation of the property contained therein. Finally, the Bank's mere assertion that it relied on the list is insufficient to prove either reliance or the intent to deceive. *In re Blair*, 25 B.R. 146 (Bankr.S.D.Ohio 1982). In *Blair*, the Court made the following statement:

> After carefully considering the evidence in this case, we conclude that intent to deceive and reliance were not proved by plaintiff, certainly not sufficiently to meet the standard of clear and convincing evidence which is required of a plaintiff in a case such as this. There is nothing in the record other than the bare statement of a bank officer that he "relied" upon the representation of home ownership in making the loan, to support the proposition that the loan would not have been made in the absence of such representation.... We are not persuaded that a misrepresentation on the occasion of the loan in 1982 regarding home ownership was in fact made.

*Id.* at 147.

Accordingly, this Court must conclude that the Bank has not met its burden of proof by clear and convincing evidence establishing a right to a determination of nondischargeability under § 523(a)(2)(A) and (B). Thus, the Court should order the debt owed by Cook to the Bank in the amount of $4,000 a dischargeable debt and judgment granted to that effect for the defendant.

An appropriate Order will issue.